CAROLINA ANILINE & EXTRACT COMPANY, INC., v. W. W. RAY, TRADING AND DOING BUSINESS AS RAY CHEMICAL COMPANY.

(Filed 6 May, 1942.)

**1. Unfair Competition § 1—**

What constitutes fair and unfair competition cannot be defined by inflexible rule, but each case must be determined upon its particular facts to ascertain whether the acts complained of would likely deceive the public.

**2. Same—**

A party advertising that his products are identical with, or possess all the properties of, the products of a competitor, is guilty of unfair competition if his statements are untrue.

**3. Same—**

A party may be guilty of unfair competition, even though his trade name is not an infringement on the trade name of a competitor, and even though his product is equal or superior to the product of his competitor, if he takes advantage of the good will and business reputation of his competitor by unfair means.

EXTRACT CO. *v.* RAY.

**4. Same—Evidence held for jury on question of whether defendant was guilty of unfair competition.**

> Plaintiff sold its plant to defendant, purchased new equipment and continued its business from another location. Thereafter, defendant wrote circular letters to plaintiff's customers stating that defendant was manufacturing products identical with plaintiff's products, and listing the trade names and prices of plaintiff's goods along with his own corresponding trade names, which were somewhat similar, and quoted lower prices. There was evidence that the products of plaintiff and defendant were not identical and that defendant's manufacturing equipment was open and not modern, while plaintiff's equipment was new, modern and enclosed. *Held:* In plaintiff's suit for injunction, the evidence should have been submitted to the jury to determine whether the goods of the parties were not identical, or whether defendant made use of plaintiff's good will and reputation, or of plaintiff's trade names to sell identical or even superior products, in either of which events plaintiff would be entitled to relief.

APPEAL from *Blackstock, Special Judge,* at November Term, 1941, of MECKLENBURG.

Civil action to recover damages and to restrain the defendant from engaging in unfair competition, in which a temporary restraining order was granted.

Prior to 27 February, 1941, the plaintiff was manufacturing and distributing certain chemical products. Pursuant to an agreement, dated 25 February, 1941, G. S. McCarty, N. G. Sixt, E. B. Wheeler, T. J. Marler and F. A. Tomalino obtained all the capital stock of the plaintiff and the plaintiff sold to the defendant all its real estate, equipment and the right to use all formulas then owned by the plaintiff except two.

On 27 February, 1941, plaintiff and defendant entered into an agreement under the terms of which defendant should manufacture, furnish and deliver to the plaintiff, at any time within sixty days from the date of the agreement, any of the products which were being offered for sale by plaintiff at the time of the agreement, such products to be manufactured or compounded according to formulas being used on 27 February, 1941, by the plaintiff. Plaintiff purchased new equipment and continued its business at another location.

The evidence discloses that from about 20 May to 26 May, 1941, the defendant wrote 29 letters to plaintiff's customers which, except for the materials described, were in the following form:

"May 21, 1941.

"LIBERTY HOSIERY MILLS, INC.,

LYERLY, GA.

"GENTLEMEN: March 1st, we purchased the plant, manufacturing equipment, and inventory of the Carolina Aniline & Extract Company. Since that time, we have been manufacturing for them, but their contract with us expired April 27, 1941.

"From now on we will try to get as much of the business as possible. We will manufacture identically the same products under our own trade names. We wish to quote below as follows:

| Their Products | Our Products | Their Price | Our Price |
|---|---|---|---|
| Carosolv CL | Raycosolv CL | .10 lb Del. | .09 lb. Del. |
| Carocen K.Spec. | Raycopen K | .20 lb Del. | .18 lb. Del. |

"We can assure you of uniform quality and immediate delivery, as our plant personnel has been kept intact and our raw material inventory has been doubled.

"If you are interested in cutting your processing costs, let us ship you a half drum of Raycosolv CL and a can of Raycopen K. If our material does not prove satisfactory in every respect, ship it back collect and we will cancel the invoice.

Yours very truly,

(Signed)　HARRY H. SIMS

HARRY H. SIMS,

Ray Chemical Company."

Plaintiff alleges that the letters were false, deceptive and intended to deceive and did deceive plaintiff's customers and has caused the plaintiff great damage, both in loss of business and good will.

Plaintiff further alleges and offers evidence tending to show that when the defendant wrote the 29 letters to plaintiff's customers, the products which were being manufactured by the defendant were not identically the same products as those then being manufactured by the plaintiff, and that in the letters the defendant listed 26 of plaintiff's products which the defendant had never manufactured for the plaintiff.

Plaintiff alleges and offered evidence tending to prove that the equipment used by defendant was open and not modern, that plaintiff has new, modern, enclosed equipment and that in manufacturing its products, even when using the formulas previously used in the open equipment, that by reason of the different method and process used, a superior product is obtained; and offered evidence tending to show that in May, 1941, all the formulas, except one or two, used by plaintiff had been changed and were not the same as the formulas used by defendant at the time defendant was making products for plaintiff. Plaintiff also alleges that the trade names used by defendant are a corruption of plaintiff's trade names and confuse the public and the customers of plaintiff.

At the conclusion of plaintiff's evidence the defendant moved for judgment of nonsuit; motion was granted and judgment entered accordingly and the temporary restraining order dissolved. Plaintiff excepted and appealed to the Supreme Court and assigned error.

EXTRACT CO. *v.* RAY.

*Carswell & Ervin for plaintiff.*
*Edward J. Hanson and Frank H. Kennedy for defendant.*

DENNY, J.   The question presented for our consideration is whether or not the court erred in granting defendant's motion for judgment as of nonsuit.   We think the evidence, when construed in the light most favorable to the plaintiff, is sufficient to carry the case to the jury.

"Competition in trade is entirely proper and universal and a person has a right by fair and honest methods to extend his business into the vicinity of another, no matter what the effect on the business of the other, and a competitor will not be enjoined from a course of business causing injury only such as might result from keen competition, and any loss or damage caused by the mere use of words or marks which are *publici juris* in their primary sense is *damnum absque injuria* for which no action lies."   63 C. J., page 413, sec. 110.

It is often very difficult to draw a distinction between fair and unfair competition.   "No inflexible rule can be laid down as to what conduct will constitute unfair competition.   Each case is, in a measure, a law unto itself.   Unfair competition is a question of fact. . . . The universal test question is whether the public is likely to be deceived."   63 C. J., p. 414, sec. 112.   This same authority further states, in the following sections: 109, p. 413: "Although plaintiff has no exclusive right in the goods themselves, such as a patent or a copyright, he may nevertheless enjoin defendant from representing either expressly or by deceptive artifice that his different article is the same as plaintiff's article."   Sec. 111, p. 413: "It is immaterial, so far as plaintiff's right to relief is concerned, that defendant's goods are of equal or superior intrinsic merit as defendant has no right to make use of plaintiff's good will and reputation, or of plaintiff's advertising, to sell even a superior article, such conduct injuring plaintiff by depriving him of sales which he otherwise would have made."   Sec. 113, p. 462: "The sending of false and misleading circulars, which would take away another's business by unfair means and deceive the public, will be enjoined.   A person may freely advertise, where such is the fact, that his article possesses all the qualities of one made by a prior manufacturer, without being guilty of unfair competition."

It will be noted that in order to escape liability for unfair competition, statements made for the purpose of inducing a competitor's customers to purchase the advertiser's products by making the express statement that his products possess all the qualities of the products of another, the statement must be true, or the injured party will be entitled to relief.

In the case of *Vortex Mfg. Co. v. Ply-Rite Contracting Co.,* 33 Fed. (2d), 302, the Court held that while the defendant was infringing a patent, that the use of the trade name "Ply-Rite" by defendant was not

an infringement of plaintiff's trade-mark "Par-Lock," but that the manner in which defendant used these names was unfair competition. The Court said: "In support of its contention that defendants' practices have been unfair, plaintiff showed instances of defendants having gone to the contractor on a particular piece of work after the architect had specified 'Par-Lock,' and having arranged to have Ply-Rite substituted; or having gone to the very customers of the plaintiff and underbid the plaintiff on the particular job, with the result that plaintiff was compelled to reduce its price in order to obtain the contract; and of claiming orally and in writing that their material was fully equal to Par-Lock. There is, however, no proof that in any of these alleged instances did defendant actually attempt to palm off their product as that of the plaintiff, or did they ever induce the actual breach of a contract. However, these are only two of the various practices that are actionable as unfair competition. Today the law of unfair competition is plastic. The test is simple, and lies in the answer to the question: Has the plaintiff's legitimate business been damaged through acts of the defendants which a court of equity would consider unfair? The court feels that the evidence requires an affirmative answer to this question. Through the peculiarly intimate knowledge which defendants had acquired of plaintiff's process, they were able to make serious inroads upon plaintiff's business, and the manner in which they did it was not without its element of unfairness. Intent is a vital element in questions of this kind. Defendants knew that they used a cheaper grade of asphalt in their bond material than did plaintiff. By reason of this fact defendants could, and had a legal right to, quote a cheaper price, but they did not have a right in so doing to state, as they did, that their material and process was fully equal to that of Par-Lock, whose process they were in the act of infringing."

In the case of *Anheuser-Busch v. Budweiser Malt Products Corp.*, 287 Fed., p. 243, the Court said: "The fundamental question in cases of trade-mark or unfair competition—and 'in fact the common law of trade-marks is but a part of the broader law of unfair competition' (*Hanover Milling Co. v. Metcalf, supra*—240 U. S., 403)—is whether the public is being misled and deceived so that a defendant is in effect taking the advantage of the good will and business reputation that a complainant has built up through service or advertising or in any manner regarded as lawful and proper."

In the case of *Krueger v. Lundeen et als.*, 211 Ill. App., 320, defendants, former employees in the dental office of plaintiff for several years, opened up a dental office of their own across the street from their former employer, and contacted patients of their former employer and made representations to influence them to visit defendants and have their future dental work done by them. The Court said: "They were entitled to make every legitimate effort to further their own welfare and increase

their professional success and profit. Of course, in such a case as this, it is not the motive of the appellants that is important, as 'a wrongful motive cannot convert a legal act into an illegal one.' Nims on Unfair Competition, etc., p. 333. It is conduct which unfairly deprives another of that which belongs to him that is condemned and which gives the Court jurisdiction and justifies the injunction. The law does not allow ex-employees to make representations concerning and give out information about their former employer's business for the double purpose, first, of seducing patients from going back to the place of business of their former employer, and, second, of obtaining their former employer's customers and pecuniarily profiting thereby."

Unfair competition is not confined to the palming off by one competitor of his goods as the goods of another. The same wrongful result may be brought about by other means or practices. *International News Service v. Associated Press,* 63 U. S., L. Ed., 211, 300 Fed., 509. "Unfair competition in trade is not confined to the imitation of a trade-mark, but takes as many forms as the ingenuity of man can devise." *Benj. T. Crump Co. v. J. L. Lindsay, Inc.,* 130 Va., 144, 107 S. E., 679.

We do not wish to discuss the evidence in this case in detail. However, the defendant in his various letters to plaintiff's customers did state, "We will manufacture identically the same products under our own trade names," and then proceeded to list the name and price of plaintiff's goods along with his own goods and quoted a lower price. If the goods were not identical, the method pursued by the defendant constitutes unfair competition. The determination of that question is one for the jury.

Likewise, the jury may consider the evidence and determine whether or not the defendant made use of the plaintiff's good will and reputation, or of plaintiff's trade names, to sell an identical or even a superior product, thereby injuring plaintiff by depriving it of sales which it otherwise would have made.

The judgment of the court below is

Reversed.