HARRINGTON MANUFACTURING COMPANY, INC. v. POWELL MANUFAC-
TURING COMPANY, INC.

No. 776SC602

(Filed 7 November 1978)

1. **Unfair Competition § 1— unfair competition or trade practices—application to disputes between competitors**

   The statute prohibiting unfair methods of competition and unfair or decep-
   tive trade practices, former G.S. 75-1.1, does not apply only to dealings be-
   tween buyers and sellers but applies to disputes between competitors.

2. **Unfair Competition § 1— advertisement not false or misleading—no unfair competition**

   Defendant's reference in its advertisement of a tobacco combine to its "ex-
   clusive CutterBar" for priming tips did not constitute an unfair method of com-
   petition or unfair or deceptive act or practice within the meaning of former
   G.S. 75-1.1 where, at the time the advertisement appeared, defendant was the
   only company which held a license to manufacture and sell the patented "Cut-
   terBar," plaintiff only obtained a similar license some two months after this
   suit was filed, and the advertisement was, therefore, neither false nor
   misleading.

3. **Unfair Competition § 1— puffing in advertisement—no unfair competition or deceptive act**

   A statement in defendant's advertisement that only defendant's tobacco
   combine primed lugs through tips, when, in fact, a combine manufactured by
   plaintiff also primed lugs through tips, did not go so far beyond tolerable
   limits of puffing as to constitute unfair competition or an unfair or deceptive
   act within the meaning of former G.S. 75-1.1 where the advertisement concern-
   ed a machine which cost in excess of $16,000, and it was directed to
   knowledgeable buyers who would not normally make such a large capital
   outlay by relying solely upon such an advertisement.

4. **Unfair Competition § 1— puffing in advertisement—no unfair competition or deceptive act**

   Allegedly false statements in plaintiff's advertisement that its tobacco
   primer was "years ahead of any other automatic tobacco harvester on the
   market," that its primer was a dramatic breakthrough in tobacco harvesting,
   and that its tobacco curing barns and racks had greater capacity, strength and
   fuel economy than those manufactured by defendant did not go so far beyond
   tolerable limits of puffing as to constitute unfair acts proscribed by former
   G.S. 75-1.1.

5. **Unfair Competition § 1— passing off competitor's goods as own product—un-fair method of competition**

   Defendant's allegations that plaintiff incorporated into its automatic tobac-
   co harvester a defoliator manufactured by defendant and demonstrated this

defoliator to potential customers as a product manufactured by plaintiff stated a claim for relief under the statute prohibiting unfair methods of competition, former G.S. 75-1.1.

APPEALS by plaintiff and defendant from *James, Judge.* Judgment entered 11 May 1977 in the Superior Court, BERTIE County. Heard in the Court of Appeals 25 April 1978.

Decisions on prior appeals in connection with this litigation are reported in 26 N.C. App. 414, 216 S.E. 2d 379 (1975), *cert. denied,* 288 N.C. 242, 217 S.E. 2d 679 (1975), and in 30 N.C. App. 97, 226 S.E. 2d 173 (1976), *appeal dismissed, pet. for discretionary review allowed for limited purpose of granting leave to Powell to assert counterclaims,* 290 N.C. 662, 228 S.E. 2d 454 (1976), *appeal dismissed and cert. denied,* 429 U.S. 1031, 50 L.Ed. 2d 743, 97 S.Ct. 722 (1977).

Plaintiff, Harrington Manufacturing Company, Inc., and defendant, Powell Manufacturing Company, Inc. are competitors in the manufacture and sale of tobacco harvesting and curing equipment. On 12 September 1974 Harrington brought this action against Powell alleging that certain claims made in Powell's advertisements were false and fraudulent and that such advertisements constituted an unfair method of competition and a deceptive act declared unlawful by G.S. 75-1.1. Powell filed answer alleging as a defense that its advertising had been true. Powell also alleged as counterclaims: first, that certain claims in Harrington's advertisements concerning its automatic tobacco primer were untrue, disparaged Powell's tobacco combine, and were unfair and deceptive acts declared illegal by G.S. 75-1.1; second, that Harrington had wrongfully passed off certain of Powell's tobacco harvesting equipment as its own; and third, that Harrington had falsely advertised its tobacco curing barns and racks as having greater capacity, strength, and fuel economy than Powell's.

Defendant Powell's motion under Rule 12(b)(6) to dismiss Harrington's complaint for failure to state a claim upon which relief may be granted was denied. Powell then moved pursuant to Rule 56 for summary judgment dismissing plaintiff Harrington's action, supporting its motion by affidavits, answers to interrogatories, and depositions. Plaintiff Harrington moved pursuant to Rule

12(b)(6) to dismiss Powell's counterclaims for failure to state a claim upon which relief can be granted. The court allowed both motions, and both parties appealed.

*Pritchett, Cooke & Burch by Stephen R. Burch and William W. Pritchett, Jr., for plaintiff, Harrington Manufacturing Company, Inc., appellant-appellee.*

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston by Gaston H. Gage and William P. Farthing, Jr., for defendant Powell Manufacturing Company, Inc., appellant-appellee.*

PARKER, Judge.

## PLAINTIFF'S APPEAL

On plaintiff Harrington's appeal, Harrington assigns error to the granting of Powell's motion dismissing Harrington's action by way of summary judgment. Defendant Powell contends the summary judgment was properly entered and cross-assigns as error the denial of its earlier motion to dismiss Harrington's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In substance, plaintiff Harrington alleged in its complaint that defendant Powell had advertised falsely that its tobacco combine was the only one which "primes lugs through tips" and that it owned the "exclusive CutterBar" for priming tips, that these statements were not true in that Harrington also manufactured a tobacco harvester which primed lugs through tips and also held a license to manufacture and sell the same device advertised by Powell as its "exclusive CutterBar," and that such false advertising by Powell constituted an unfair method of competition with Harrington and was a deceptive act declared unlawful by G.S. 75-1.1(a). Plaintiff Harrington further alleged that Powell's untrue advertisements had damaged plaintiff in the sum of $10,000,000.00, for which it prayed that it be awarded treble damages under G.S. 75-16.

We note initially that Chap. 747 of the 1977 Session Laws, which rewrote Subsections (a) and (b) of G.S. 75-1.1, is not applicable to the present case. This action was pending when the 1977 act was adopted, and Sec. 5 of that act expressly provides

that it shall not apply to pending litigation. Therefore, as applicable to this case G.S. 75-1.1 is the form of that statute as it existed prior to the 1977 amendment, and the further references to that statute in this opinion will be to the statute as it was originally adopted in 1969 and as it read when this case was instituted. At that time, G.S. 75-1.1(a) and (b) read:

> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

> (b) The purpose of this section is to declare, and to provide civil means to maintain, ethical standards of dealings between persons engaged in business, and between persons engaged in business and the consuming public within this State, to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State.

[1]   At the outset, we consider and reject defendant Powell's contention, asserted as one of its grounds for sustaining the summary judgment and also as a ground in support of its cross-assignment of error, that G.S. 75-1.1 does not apply to disputes between competitors but only to "dealings" between "buyers and sellers." From this, Powell argues that, there having been no "dealings" between it and Harrington as "buyers and sellers," G.S. 75-1.1 can have no application to this case. We do not so narrowly read the statute. G.S. 75-1.1(a) expressly proscribes "[u]nfair methods of competition," and competition necessarily requires that there be a competitor. G.S. 75-1.1(b) speaks in terms of declaring and providing civil means of maintaining ethical standards of dealings "between persons engaged in business," as well as between such persons and the consuming public. We hold, therefore, that G.S. 75-1.1 is applicable to the transactions alleged in plaintiff's complaint. The question presented by plaintiff's appeal thus becomes whether, when that statute and any applicable common law principles are properly applied to the material facts as to which no genuine issue has been shown, defendant was as a matter of law entitled to the summary judgment dismissing plaintiff's action. We hold that it was.

Affidavits, depositions, and answers to interrogatories show that there is no genuine issue as to the following facts:

Powell placed the following advertisement in the September and October 1974 issues of *The Progressive Farmer* and in the 5 September 1974 issue of *Southeast Farm and Livestock Weekly*:

IF YOU ALREADY OWN A POWELL TOBACCO COMBINE, SHOW THIS AD TO YOUR NEIGHBOR.

HE WANTS TO STAY IN BUSINESS TOO:

Like you, with labor high, hard to find and harder to keep, most tobacco growers have no choice. They *have* to mechanize to stay in business.

Powell's exclusive, *proven* system of Total Tobacco Mechanization is the answer. It's flexible . . . you start on any scale you want and add to it each year.

Consider the high-capacity Powell Tobacco Combine. Used with Powell Bulk Curing/Drying Systems, it can cut your *total* harvest labor to just 4 people! (Driver, Transporter, 2 Rack & Barn Loaders.) This high capacity machine enables you to harvest one acre per hour with this small crew.

And *only* the Powell Combine primes *lugs through tips*. Our FlexBar header, plus exclusive CutterBar for priming tips, gets the job done.

Mechanize the Powell Way. Start now for '75-Advance planning is the key. Ask Powell to help. Mail the coupon today.

Powell also had the following advertisement broadcast on four dates in August 1974 from television stations in High Point, Raleigh, and Greenville, North Carolina, and from television stations in Florence, South Carolina, and Albany, Georgia:

"Total Mechanization

"With this year's tobacco crop season winding up, it's not a day too soon to begin planning next year's crop, and how you'll handle it.

"With labor high and hard to find, most growers have no choice. They must mechanize to stay in business.

"Usually you'd begin by installing one or more Powell bulk curing systems, like these Powell three-tier mobile units. This high-capacity, efficient system can cut both your curing labor and fuel costs in half.

"Then there's the proven, high-capacity Powell tobacco combine, that harvests an acre an hour — usually with just one man — the driver. It's the only combine on the market that primes lugs through the tips.

"Also the two or four row Powell Aerotopper, to top and spray your crop . . .

"And single and multi-row Powell transplanters, with once-over fertilizer units.

"That's Total Tobacco Mechanization . . . pioneered by Powell. Talk to your Powell dealer. Start planning now for seventy-five."

Powell has manufactured and sold its "CutterBar" since 1962. "CutterBar" is a descriptive term used exclusively by Powell to describe a mechanical tobacco harvesting device consisting of a blade assembly which operates on the principle of utilizing blades revolving with an upward cutting motion to cut leaves from the tobacco stalk. This blade assembly was invented by Dr. William Splinter of North Carolina State University, and it is sometimes referred to as the "Splinter knife type defoliator." The patent rights on this invention were assigned by North Carolina State University to Research Corporation of America, which in turn granted Powell a license to manufacture and sell machines covered by the patent. From March 1962 until 15 November 1974 Powell was the only firm licensed under the Splinter patent. On 15 November 1974 Research Corporation of America granted Harrington a license to manufacture under the patent. Both the license granted to Powell and the license granted to Harrington were non-exclusive.

Beginning in 1967 Harrington has also manufactured a fully automotic tobacco harvester which it has advertised and sold under the name "Roanoke Automatic Tobacco Harvester." Prior to the fall of 1974 this machine utilized a revolving rubberized spiral type defoliator to wipe the leaves from the stalk in a

downward motion. This machine would prime lugs through tips. In August 1974 an employee of Harrington purchased a Powell "CutterBar" from Revelle Tractor Company. This unit, which had been manufactured by Powell, was brought to Harrington's plant in Lewiston, North Carolina, where it was incorporated into one of Harrington's automatic tobacco harvesters. Harrington added a hydrosynchronizer, a device which had been invented by Harrington's engineers, which synchronized by hydraulics the timing of the knife of the blade assembly with the forward motion of the harvester. On 28, 29, and 30 September 1974 Harrington broadcast a commercial over television stations in Greenville and Durham, North Carolina, and in Roanoke, Virginia. The video portion showed a blade assembly operating in a tobacco field and this was accompanied by the following audio announcement:

Mr. Tobacco Farmer:

Attend the Roanoke Automatic Tobacco Harvester Demonstration Monday, September 30; Tuesday, October first. See the Roanoke Automatic Tobacco Harvester using the Roanoke Hydro-Synchronized Blade Assembly. The Hydro-Synchronized Blade Assembly is a Dramatic Break-Through in harvesting tobacco. For information and direction, call Harrington Manufacturing Company, Lewiston, North Carolina.

As advertised in this commercial, Harrington demonstrated its automatic harvester, to which the Powell "CutterBar" had been attached, to some three hundred farmers who came from Eastern North Carolina, South Carolina, and Georgia. Harrington did not tell them it was a Powell "CutterBar" that they were looking at. Harrington took approximately fifteen orders for its Hydrosynchronized blade assembly for delivery before the 1975 tobacco season.

The list price for a fully equipped 1974 Powell tobacco combine was $16,398.60. The retail price of a 1974 standard Harrington Roanoke harvester was $16,500.00.

[2] As above noted, the gravamen of plaintiff Harrington's complaint is that Powell violated G.S. 75-1.1 by falsely advertising that Powell's tobacco combine was the only one which primed lugs through tips and that it owned "the exclusive CutterBar for

priming tips." As to this latter charge concerning the CutterBar, the only reference made to this device by name in the advertisement of which Harrington complains was in the sentence which stated, "Our FlexBar header, plus exclusive CutterBar for priming tips, gets the job done." It is undisputed that at the time this advertisement appeared in 1974 and for some twelve years prior thereto, Powell was in fact the only company which held a license to manufacture and sell the patented device to which it gave the name "CutterBar." It was not until 15 November 1974, approximately two months after this case was instituted, that Harrington obtained a similar license. Under these circumstances the reference in Powell's advertisement to "exclusive CutterBar" was neither false nor misleading. Publishing an advertisement which is neither false nor misleading is not an unfair method of competition or unfair or deceptive act or practice within the meaning of G.S. 75-1.1.

[3]    As to the statement in Powell's advertisement that "only the Powell Combine primes lugs through tips," Harrington contends that the logical implication of such a statement is that Harrington's automatic tobacco harvester did not prime lugs through tips, that this was untrue, and that the making of such a disparaging statement constituted an unfair method of competition and was an unfair or deceptive act declared unlawful by G.S. 75-1.1(a). If it be conceded that the disparaging implication of which Harrington complains may be drawn from the Powell advertisement as a matter of strict logic, it does not necessarily follow that the making of the advertisement, in the context of this case, comes within the ambit of unfair conduct proscribed by the statute. Unfair competition has been referred to in terms of conduct "which a court of equity would consider unfair." *Extract Co. v. Ray*, 221 N.C. 269, 273, 20 S.E. 2d 59, 61 (1942). Thus viewed, the fairness or unfairness of particular conduct is not an abstraction to be derived by logic. Rather, the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others. The experience of our times is that a certain amount of puffing of one's own goods, even when the logical implication is to disparage the goods of another, has long been prevalent in our culture. Whether such puffing in the case of particular advertisement exceeds the bounds of fairness must be

determined by viewing it against the background of all of the relevant facts of that case. One relevant fact concerns the market which the advertisement is designed to influence. A false advertisement designed to influence the buying habits of children should be judged by stricter standards than one directed only toward the knowledgeable and sophisticated. In the present case Powell's advertisement concerned a machine which cost in excess of $16,000.00. It was directed to farmers who could afford such a substantial investment and whose operations had been sufficiently successful that they had grown big enough to justify the use of such expensive equipment. Buyers of this type would not normally make such a large capital outlay by relying solely upon a magazine advertisement or a radio or television broadcast, especially when accurate technical information concerning the item was readily available. It is our opinion, and we so hold, in the context of this case Powell's advertisement did not constitute unfair competition or an unfair or deceptive act within the meaning of G.S. 75-1.1.

The order granting defendant's motion for summary judgment is

Affirmed.

## DEFENDANT'S APPEAL

Defendant Powell appeals from the order granting plaintiff's motion under Rule 12(b)(6) dismissing defendant's three counterclaims for failure to state a claim upon which relief can be granted.

[4] Powell's first and third counterclaims (alleged in its "Fourth Defense" and "Sixth Defense" respectively) present essentially the same question as was presented by plaintiff's appeal.

In its first counterclaim, Powell complains that the following advertisements published by Harrington were untrue, disparaged Powell's tobacco combine, and were unfair within the meaning of G.S. 75-1.1:

"Roanoke's '76 Model Automatic Tobacco Primer . . . years ahead of any other automatic harvester."

"Roanoke was the '74 field champion."

"Roanoke Automatic Tobacco Primer, the one that really works; a dramatic breakthrough in tobacco harvesting."

"Roanoke's '74 Model Automatic Tobacco Primer is years ahead of any other automatic tobacco harvester on the market."

"Harrington Manufacturing Company, Inc. has announced a new tobacco harvester component which was demonstrated to tobacco harvester dealers and farmers in the U.S. and Canada.

A blade defoliator that gets all the leaves on the upper half of the stalk without getting all the suckers is working very effectively, say the developers."

Powell alleged that the foregoing advertisements by Harrington damaged Powell's business reputation and the business reputation of its machines in the sum of $10,000,000.00, and it prayed recovery of treble damages under G.S. 75-16.

In its third counterclaim, Powell complains about an advertisement published by Harrington that Harrington's tobacco curing barns have the "largest capacity rack" and that it has "the only bolted rack on the market — no welding or self-tapping set screws." Powell also complained concerning a Harrington advertisement which proclaimed:

### Loading Capacity Unequaled

The Roanoke Bulk Tobacco Curing Rack is the brute of the industry. It's designed for heavy loading for fuel savings. Its capacity is unequaled — 13% larger than Long, stronger than Powell. The Roanoke Rack has 5 more tines than the Powell Rack — more tine support for more holding power, less fallout. Strong cradle section allows full packing. The Roanoke Rack is designed for heavier loading for fuel economy — fill it up and save on fuel costs.

Powell alleged that Harrington's tobacco curing racks and barns do not have a greater capacity than Powell's, are not stronger than Powell's, do not save on fuel costs more than Powell's, and that Powell's are bolted, not welded, and have no self-tapping set screws. Powell alleged that Harrington's adver-

tisements were misrepresentations of facts and were unfair and deceptive acts prohibited by G.S. 75-1.1. Powell alleged that its damages directly caused by these acts were as much as $13,500,000.00, and it prayed for treble damages under G.S. 75-16.

What was said in connection with plaintiff's appeal is applicable to defendant's appeal from the order dismissing its first and third counterclaims. The statements in Harrington's advertisements as to which Powell complains did not, in our opinion, go so far beyond tolerable limits of puffing as to constitute unfair acts proscribed by G.S. 75-1.1. Harrington's advertisements, as was the case with Powell's which were the subject of Harrington's complaint, were directed to knowledgeable buyers who could not easily have been misled by exaggerated claims. We caution, however, that all advertisers would be well advised to exercise care not to step over the necessarily vague but nonetheless real boundary line dividing fair conduct from foul which the court from time to time may be called upon to draw. This is particularly true in view of the possibility that treble damages might be imposed under G.S. 75-16. We hold only that, under the circumstances of this case, the advertisements which were the subject of defendant's first and third counterclaims, like those which were the subject of plaintiff's complaint, did not pass over that line. There was no error in the trial court's order dismissing defendant's first and third counterclaims.

[5] Powell's appeal from the order dismissing its second counterclaim presents a different question. In its second counterclaim (alleged as its "Fifth Defense and Counterclaim"), Powell in substance alleged: that in the fall of 1974 Harrington advertised extensively in newspaper advertising and on television that its "Roanoke Hydro-Synchronized Blade Assembly" was a "dramatic break-through;" that a demonstration of the "Roanoke Automatic Tobacco Harvester using the Hydro-Synchronized Blade Assembly" was conducted by Harrington at or near Ahoskie, North Carolina, on 30 September and 1 and 2 October, 1974, and was witnessed by a considerable number of tobacco growers; that the blade assembly which was demonstrated harvesting tobacco in that demonstration was not a "dramatic break-through" as advertised by Harrington but on the contrary was Powell's "CutterBar" which Powell had started selling in 1962; that Harrington further wrongfully passed off Powell's

"CutterBar" as Harrington's "Hydro-Synchronized Blade Assembly" in newspaper advertising, leaflets, TV and at the Raleigh State Fair from 18 to 27 October 1974 and at a field demonstration at South Boston, Virginia, in the fall of 1974; that by wrongfully passing off Powell's "CutterBar" as Harrington's equipment, Harrington wrongfully misappropriated the very large investment which Powell had made in experimentation, engineering, and development to bring its "CutterBar" to a high level of quality and efficiency; that Harrington's acts constituted unfair methods of competition and unfair and deceptive acts or practices in the conduct of Harrington's trade or commerce prohibited by G.S. 75-1.1; that the damages directly caused Powell by Harrington's acts were as much as $14,500,000.00; and that Powell is entitled to recover treble damages under G.S. 75-16.

No precise definition of the term "unfair methods of competition" as used in G.S. 75-1.1 is possible. Perhaps it is not even desirable that there be one. This is so because the acts to which the term should properly be applied are ever changing in character as social and business conditions change. Speaking of the body of law term "unfair competition," one authority has said:

> It applies to misappropriation as well as misrepresentation; to the selling of another's goods as one's own, to misappropriation of what equitably belongs to a competitor; to acts which lie outside the ordinary course of business and are tainted by fraud, coercion, or conduct otherwise prohibited by law. Most courts continue to confine it to acts which result in the passing off of the goods of one man for those of another, but this limitation is not universally accepted.

1 Nims, The Law of Unfair Competition and Trade-Marks (4th ed. 1947) § 1, p. 3.

The "passing off" of one's goods as those of a competitor has long been regarded as unfair competition. Aycock, *Antitrust and Unfair Trade Practice Law in North Carolina—Federal Law Compared,* 50 N.C.L. Rev. 199, at 248 (1972). In the present case Powell did not allege in its second counterclaim that Harrington attempted to pass off its own machine as Powell's. Quite the contrary, Powell charged that Harrington took Powell's product, the blade assembly which had been manufactured by Powell, and

demonstrated this to potential customers of both companies as Harrington's product. Although the nature of the deception alleged in this case differs from that found in the usual case of "passing off," the underlying nature of the wrong is the same. Both cases involve the misappropriation of benefits which flow from the quality of a competitor's product.

It should be noted that Powell has not alleged that Harrington has wrongfully copied Powell's product. The allegation is that Harrington used Powell's actual product in demonstrations to potential customers, at the same time falsely representing to the potential customers that the product had been manufactured by Harrington. Although such conduct may not fit the mold to which the term "passing off" has traditionally been applied, in our opinion it does constitute an unfair method of competition within the purview of G.S. 75-1.1.

We hold that Powell's second counterclaim, as alleged in its "Fifth Defense and Counterclaim," did state a claim upon which relief can be granted.

The result is:

On plaintiff's appeal the order granting defendant's motion for summary judgment is

Affirmed.

On defendant's appeal, the order granting plaintiff's motion under Rule 12(b)(6) dismissing defendant's first and third counterclaims, alleged in defendant's "Fourth Defense and Counterclaim" and in its "Sixth Defense and Counterclaim," is

Affirmed.

The order dismissing defendant's second counterclaim, alleged in its "Fifth Defense and Counterclaim," is

Reversed.

Judges VAUGHN and WEBB concur.