Keister v. Nat'l Council of the Young Men's Christian Ass'n of the United States, 2013 NCBC 36.

STATE OF NORTH CAROLINA

COUNTY OF BUNCOMBE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 1137

MICHAEL KEISTER, Individually, and )
SUSAN LEWIS-KEISTER, Individually, and )
on Behalf of All Others Similarly Situated, )
                 Plaintiffs )
                  )
          v. )
                  )
NATIONAL COUNCIL OF THE YOUNG )
MEN'S CHRISTIAN ASSOCIATION OF )
THE UNITED STATES OF AMERICA d/b/a )
YMCA OF THE USA, YMCA OF WESTERN )
NORTH CAROLINA, INC., ASHEVILLE )
YMCA, CORPENING MEMORIAL YMCA, )
HENDERSON COUNTY FAMILY YMCA, )
REUTER FAMILY YMCA and )
NEIGHBORHOOD YMCA AT WOODFIN, )
                 Defendants )

**OPINION AND ORDER ON
MOTIONS TO DISMISS**

THIS MATTER comes before the court upon Defendant National Council of the Young Men's Christian Association of the United States of America d/b/a YMCA of the USA's Motion to Dismiss ("Y-USA Motion") and Defendants YMCA of Western North Carolina, Inc., Asheville YMCA, Corpening Memorial YMCA, Henderson County Family YMCA, Reuter Family YMCA and Neighborhood YMCA at Woodfin's Motion to Dismiss ("Y-WNC Motion") (collectively, "Motions"); and

THE COURT, having reviewed the Motions, briefs in support of and in opposition to the Motions, arguments of counsel and other appropriate matters of record, FINDS and CONCLUDES that the Motions should be GRANTED for the reasons stated herein.

*Capua Law Firm, P.A., by Paul A. Capua, Esq. and Michael J. Volpe, Esq. for Plaintiffs.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by H. Bernard Tisdale III, Esq., Michael L. Wade, Jr., Esq. and Gregory P. McGuire, Esq. for Defendant National Council of the Young Men's Christian Association of the United States of America d/b/a YMCA of the USA.*

*McGuire Woods L.L.P. by H. Landis Wade, Esq., for Defendants YMCA of Western North Carolina, Inc., Asheville YMCA, Corpening Memorial YMCA, Henderson County Family YMCA, Reuter Family YMCA and Neighborhood YMCA at Woodfin.*

Jolly, Judge.

## PROCEDURAL HISTORY

[1]     On May 7, 2012, Plaintiffs Michael Keister ("Keister") and Susan Lewis-Keister, individually and behalf of all others similarly situated, filed an Amended Complaint[1] against Defendants National Council of the Young Men's Christian Association of the United States of America d/b/a YMCA of the USA ("Y-USA"), YMCA of Western North Carolina, Inc. ("Y-WNC"), Asheville YMCA, Corpening Memorial YMCA, Henderson County Family YMCA, Reuter Family YMCA and Neighborhood YMCA at Woodfin (collectively, "Y-WNC Facilities").

[2]     The Amended Complaint alleges three claims for relief ("Claim(s)") against Y-USA: Count I – Violations of N.C. Gen. Stat. § 75-1.1 ("First Claim"), Count II – Breach of Fiduciary Duty ("Second Claim") and Count III – Breach of Implied-in-Fact Contract ("Third Claim").  The Amended Complaint also alleges three Claims against all Defendants: Count IV – Violations of N.C. Gen. Stat. § 75-1.1 ("Fourth Claim"), Count V – Breach of Fiduciary Duty ("Fifth Claim") and Count VI – Breach of Implied-in-Fact

---

[1] On April 30, 2012, the court, *sua sponte*, struck Plaintiffs' original Complaint and ordered the Complaint to be sealed due to unnecessary, extremely offensive, outrageous and explicit allegations contained in the Complaint.  In response to the court striking the original Complaint, Plaintiffs' filed the Amended Complaint, deleting the offensive allegations.

Contract ("Sixth Claim").  All of Plaintiffs' Claims have been alleged as purported class claims.

[3]     On July 11, 2012, Y-USA filed the Y-USA Motion, seeking dismissal of all Claims against it, pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").  On the same day, Y-WNC and Y-WNC Facilities filed the Y-WNC Motion, also seeking dismissal of all Claims against them pursuant to Rule 12(b)(6).

[4]     On October 4, 2012, the court entered an Order on Motions to Dismiss and Compelling Mediation and Staying Action, dismissing Y-WNC Facilities from this civil action.[2]

[5]     On April 12, 2013, the court entered an Order on Joint Motion for Approval of Pre-Certification Voluntary Dismissal with Prejudice of all Claims against Y-WNC, approving a settlement entered into between Plaintiffs and Y-WNC.[3]

[6]     Accordingly, except for Y-USA, all other Defendants have either been dismissed from this civil action or settled with Plaintiffs.

[7]     The Y-USA Motion has been fully briefed and argued and is ripe for determination.

## FACTUAL BACKGROUND

Among other things, the Amended Complaint alleges the following:

---

[2] In that Order, the court stated that "[a]n appropriate Opinion and Order with regard to dismissal of [Y-WNC Facilities] will be published in due course."  This Opinion and Order is entered to rule upon the remaining Motions and to explain the court's rationale in dismissing Y-WNC Facilities from this civil action.
[3] As a result of the settlement, all Claims alleged against Y-WNC have been dismissed.  Accordingly, that part of the Y-WNC Motion seeking dismissal of those Claims is MOOT and requires no further action by this court.

[8]     Y-WNC operates a number of YMCA facilities in western North Carolina, including the five Y-WNC Facilities named as Defendants.[4]

[9]     Y-USA governs the operation of YMCA facilities through its by-laws, constitutions, policies and procedures.[5] Y-WNC and Y-USA advertise their facilities as a safe place for members and their guests.[6] Because of these advertisements and representations, consumers join the YMCA on the premise that the YMCA provides a healthy and safe environment for families.[7] Plaintiffs allege that these representations made by the YMCA are misleading and deceptive.[8] Additionally, Plaintiffs allege that by virtue of their making such representations, Y-USA and Y-WNC stand in a fiduciary relationship with their members.[9]

[10]     At times material, Plaintiffs and their family were members of the Asheville YMCA.[10] Sometime in 2009, Plaintiff Keister witnessed illicit sexual activity in the men's locker room showers at the Asheville YMCA and reported the activity to an employee at the facility.[11] After this incident, Plaintiff Keister returned to the same facility and was himself sexually assaulted by a fellow YMCA member.[12] Following this incident, Plaintiff Keister returned to the same facility and was again sexually assaulted, for the second time, by a fellow YMCA member.[13]

[11]     Each time Plaintiff Keister either witnessed illicit sexual activity or was personally assaulted, he reported the conduct to a YMCA employee at the facility who

---

[4] Am. Compl. ¶ 4.
[5] *Id.* ¶ 5.
[6] *Id.* ¶ 11.
[7] *Id.* ¶¶ 12-14, 39.
[8] *Id.* ¶ 40.
[9] *Id.* ¶¶ 60-61, 81-82.
[10] *Id.* ¶ 12.
[11] *Id.* ¶¶ 16-18.
[12] *Id.* ¶¶ 19-25.
[13] *Id.* ¶¶ 23-25.

assured him the conduct would be addressed.[14]  Plaintiffs allege that Y-USA and Y-WNC have been aware of similar illicit conduct for decades.[15]  Despite knowledge of this type of activity occurring at various YMCA facilities, Y-USA and Y-WNC continue to advertise their facilities as safe and family-oriented.[16]  Plaintiffs allege that instead of being safe, the YMCA facilities present members with an unreasonable risk of being sexually assaulted.[17]

[12]　Plaintiffs have not made any specific allegations against Y-WNC Facilities and have alleged no claims for relief against Y-WNC Facilities.

## DISCUSSION

[13]　When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must determine "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted."  *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987).  To make this determination, courts are to take the well-pleaded allegations of the complaint as true and admitted, but conclusions of law or unwarranted deductions are not admitted.  *Sutton v. Duke*, 277 N.C. 94, 98 (1970).  Consistent with the system of notice pleading, a court, when considering a motion to dismiss pursuant to Rule 12(b)(6), should afford the complaint a liberal construction.  *Zenobile v. McKecuen*, 144 N.C. App. 104, 110 (2001).

[14]　Following the standard set by Rule 12(b)(6), a complaint may be properly dismissed if: (a) the complaint on its face reveals that no law supports plaintiff's claim; (b) the complaint on its face reveals the absence of facts sufficient to make a good

---

[14] *Id.* ¶¶ 17-27.
[15] *Id.* ¶ 35.  Plaintiff refers to this conduct as "cruising," which he describes as the act of men seeking out other men for sex and other sexual relations in public places. *Id.* ¶ 30.
[16] *Id.* ¶ 77.
[17] *Id.* ¶ 43.

claim; or (c) any fact disclosed in the complaint necessarily defeats plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986). This Opinion and Order will address Plaintiffs' Claims in turn.

<u>Plaintiffs' Claims against Y-USA</u>

<u>First Claim</u>

[15] Plaintiffs' First Claim alleges that Y-USA violated N.C. Gen. Stat § 75-1.1 ("Chapter 75") (hereinafter, references to the North Carolina General Statutes will be to "G.S.") by engaging in promotional activity that deceptively marketed YMCA facilities nationwide as being, among other things, safe and healthy environments, despite having full knowledge of illicit sexual activities occurring at YMCA facilities. Y-USA contends that this Claim should be dismissed because the alleged representations were neither unfair nor deceptive. Further, Y-USA contends that Plaintiffs have not alleged actual reliance upon any representation purportedly made by Y-USA.

[16] To recover under Chapter 75, a plaintiff must show that (a) the defendant engaged in an unfair or deceptive practice or act, (b) in or affecting commerce and (c) such act proximately caused actual injury to the plaintiff. *Governor's Club, Inc. v. Governors Club Ltd. P'ship*, 152 N.C. App. 240, 250 (2002) (citing *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 664 (1995)). An act or practice qualifies as "deceptive" under Chapter 75 if it "has a tendency to deceive." *Dalton v. Camp*, 353 N.C. 647, 656 (2001).

[17] Fraud or misrepresentation occurring during a commercial transaction is not a *per se* violation of Chapter 75, but such conduct can be the basis of a claim under Chapter 75. *See, e.g., Morris v. Bailey*, 86 N.C. App. 378 (1987) (affirming Chapter 75

violation where defendant made false representations concerning the condition of a used vehicle and plaintiff relied on such representations).  Moreover, when a Chapter 75 claim is predicated on an alleged misrepresentation by the alleged wrongdoer, "the plaintiff must show actual reliance on the alleged misrepresentation in order to establish that the alleged misrepresentation proximately caused" the complained of injury. *Sunset Beach Dev., LLC v. AMEC, Inc.*, 196 N.C. App. 202, 211 (2009).

[18]    The question of whether a particular practice constitutes an unfair or deceptive trade practice is a question of law for the court.  *United Labs., Inc. v. Kuykendall*, 322 N.C. 643, 664 (1988).  The existence of unfair acts and practices must be determined from the circumstances of each case.  *Goodrich v. Rice*, 75 N.C. App. 530 (1985).  A practice is deceptive if it has a tendency to deceive. *Marshall v. Miller*, 302 N.C. 539, 548 (1981).

[19]    Unfair competition has been referred to in terms of conduct "which a court of equity would consider unfair."  *Extract Co. v. Ray*, 221 N.C. 269, 273 (1942).  "[T]he fairness or unfairness of a particular conduct is not an abstraction to be derived by logic. Rather, the fair or unfair nature of particular conduct is to be judged by viewing it against the background of actual human experience and by determining its intended and actual effects upon others."  *Harrington Mfg. Co. v. Powell Mfg. Co.*, 38 N.C. App. 393, 400 (1978).  Advertising "which is neither false nor misleading is not an unfair method of competition or [an] unfair or deceptive act or practice within the meaning of G.S. 75-1.1." *Id.*

[20]    As discussed above, Plaintiffs' Unfair and Deceptive Trade Practice Claim is directed toward the marketing and advertising efforts of Y-USA.  Specifically, Plaintiffs

argue that the efforts of Y-USA to market YMCAs nationwide as safe, family friendly and Christian-oriented environments, viewed in light of its alleged knowledge of the practice of "cruising" at some of its facilities, amounts to an unfair and deceptive trade practice. Specifically, Plaintiffs allege that the efforts of Y-USA in this regard are deceptive.

[21]    Notably, the Amended Complaint alleges that Y-USA is a "National Resource Office of YMCAs nationwide."  Thus, the marketing and advertising efforts of which Plaintiffs complain appear to be the national marketing efforts of Y-USA.  The question before the court is whether Y-USA's efforts to market YMCAs nationwide as safe, friendly and Christian-oriented environments amount to an unfair or deceptive trade practice where the Y-USA was aware of instances of "cruising" within certain discrete YMCA facilities.

[22]    The material factual allegations of the Amended Complaint are that: (a) Keister witnessed homosexual activity in a men's YMCA locker room;[18] (b) Keister became the subject of an incident involving sexual misconduct aimed at Keister;[19] (c) Keister was "molested" in the sauna of a YMCA;[20] (d) Keister's landscaper experienced similar behavior at the same YMCA[21] and (e) management of the YMCA Keister attended was aware of instances of "cruising" and sexual activity within certain YMCAs.[22]  The Amended Complaint alleges, upon information and belief, that (a) Y-USA has known about "cruising" at its facilities for decades and has turned a permissive eye toward such behavior[23] and (b) Y-USA does little to prevent or eliminate "cruising"

---

[18] *Id.* ¶ 17.
[19] *Id.* ¶ 19.
[20] *Id.* ¶ 25.
[21] *Id.* ¶ 28.
[22] *Id.* ¶ 27.
[23] *Id.* ¶ 30.

and does not warn the public about it.[24]  The actual extent of "cruising" at YMCA

facilities nationwide is not disclosed by the Amended Complaint. Plaintiffs allege, upon

belief alone, that "cruising" at YMCAs is "becoming more prevalent,"[25] and that

"cruising" generally "occurs at YMCA facilities around the country and at North Carolina

facilities in particular."[26]

[23]    The general allegations that the YMCA takes a permissive stance on

"cruising" and otherwise does little to prevent or eliminate "cruising" is unsupported by

factual allegations.  On the contrary, the Amended Complaint contains specific

allegations of fact that contradict these general allegations.  In this regard, the Amended

Complaint alleges that: (a) the YMCA representative to whom Keister reported his

observation of homosexual activity assured Keister she would take immediate steps to

address the issue;[27] (b) in the 1960s the YMCA attempted to curtail cruising;[28] (c) the

YMCA's National Council appointed a committee to study and find positive ways to deal

with "cruising"[29] and (d) the YMCA has taken actions such as the creation of family

changing rooms as an alternative to single-sex locker rooms.[30]  In light of the specific

contradictory factual allegations put forth by Plaintiffs, and pursuant to the standards of

12(b)(6), as expressed in *Sutton* and elsewhere, the court is not required to accept as

true the general and unsupported deductions by Plaintiffs that Y-USA *permits* "cruising"

to occur at its facilities and that Y-USA does little to discourage or prevent "cruising" at

---

[24] *Id.* ¶ 33.
[25] *Id.* ¶ 34.
[26] *Id.* ¶ 38.
[27] *Id.* ¶ 21.
[28] *Id.* ¶ 36.
[29] *Id.* ¶ 37.
[30] *Id.* ¶ 42.

its facilities. The remainder of Plaintiffs' allegations are accepted as true for present purposes and deemed to be admitted.

[24] The court concludes that those factual allegations of the Amended Complaint that are deemed to be admitted are insufficient to support a finding or conclusion that Y-USA's marketing efforts amount to an unfair or deceptive trade practice. The fact that Plaintiff, and others, may have been subjected to "cruising" behavior at one or more YMCAs, coupled with Y-USA's alleged awareness of such behavior, does not render Y-USA's representations that YMCAs are generally safe, family-friendly and Christian-oriented environments unfair or deceptive. The unilateral decision by some YMCA members and patrons to use facility locker rooms for "cruising" activities does not render YMCA facilities inherently unsafe so as to make Y-USA's assertions false, misleading or otherwise deceptive. Further, such unilateral decisions of personal behavior by some YMCA members and patrons do not somehow make Y-USA's representations that its facilities are Christian-oriented and family-friendly false, misleading or otherwise deceptive to an extent that would support a Chapter 75 claim.

[25] The court does not read the Y-USA's marketing statements to constitute representations that consumers, as YMCA members, would never be subjected to behavior they might find unacceptable within the walls of a YMCA. Rather, YMCA facilities are largely public facilities with numerous members and the YMCA cannot entirely control the behavior of individuals who elect to make use of those facilities. Joining or using a YMCA is no guarantee of avoiding behavior that some consumers might find objectionable. Accordingly, the representations of Y-USA do not have a tendency to deceive consumers.

[26]     Viewed against the background of actual human experience, the court concludes that the Y-USA's marketing efforts are not unfair for the same reason. A practice is considered unfair where it "offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious. . . ." *Johnson v. Insurance Co.*, 300 N.C. 247, 263, 266 S.E. 2d 610, 621 (1980).  The court finds nothing in the marketing efforts of the Y-USA that rises to the level of an unfair practice under this standard.

[27]     Words and phrases such as "safe," a "healthy and safe environment for families" and putting "Christian principles into practice through programs that build healthy spirit, mind and body for all" are troublesome in the context of the present action.  Such words and phrases defy precise definition and are not capable of objective verification based on the facts as alleged in the Amended Complaint, if at all.  To serve as the basis of Plaintiffs' Chapter 75 Claim, Plaintiffs would have to show that these representations had, at least, a tendency to deceive or mislead consumers.  The tendency of such representations to deceive YMCA members nationwide, however, cannot be demonstrated solely by reference to Plaintiff's personal experiences at a specific YMCA.  Nor can such a tendency be demonstrated by the unsupported inference that other YMCA members have experienced incidents similar to those experienced by Plaintiff.

[28]     Based on the facts of the Amended Complaint, the marketing efforts of Y-USA amount to advertising that is neither false nor misleading on its face and therefore cannot serve as the basis of Plaintiffs' Chapter 75 Claim.  Accordingly, with respect to the First Claim, the Motion should be GRANTED.

<u>Second Claim</u>

[29]     By way of this Claim, Plaintiffs allege that Y-USA breached a fiduciary duty owed to Plaintiffs in a number of ways, including failing to uphold the promised safety standards of the YMCA.[31]  Y-USA contends that no fiduciary relationship existed between it and Plaintiffs, and therefore, the Second Claim should be dismissed.

[30]     North Carolina law recognizes two general categories of fiduciary relationships, with one category arising from the legal relationship that exists between the parties and the other arising out of fact.[32]  Well-established examples of the first category of relationships are "attorney and client, broker and principal, executor or administrator and heir, legatee or devisee, factor and principal, guardian and ward, partners, principal and agent, trustee and *cestui que trust*."  *BDM Invs. v. Lenhil, Inc.*, 2012 NCBC 7, ¶ 89 (N.C. Super. Ct. Jan. 18, 2012) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598 (1931)) (internal quotations omitted).  The relationship that existed between Plaintiffs and Y-USA is not one of the legal relationships recognized by North Carolina law that gives rise to a fiduciary relationship.  Accordingly, the court must examine the second category of fiduciary relationships.

[31]     The second category includes those that exist as fact.  In *Abbitt*, the North Carolina Supreme Court stated that a fiduciary relationship, in addition to arising as a matter of law with certain relationships, can exist in fact where "there is confidence reposed on one side, and resulting domination and influence on the other."  *Abbitt*, 201 N.C. at 598.  Generally, consumer-type relationships where the parties deal with each other in an arm's length relationship are not fiduciary relationships.  *See Tin Originals,*

---

[31] *Id.* ¶ 63.
[32] The legal relations that give rise to a fiduciary relationship are often referred to as *de jure* fiduciary relationships and those arising out of fact are often referred to as *de facto* fiduciary relationships.

*Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663, 666 (1990). One necessary requirement for a fiduciary relationship to arise out of fact is that one party must exhibit "resulting superiority and influence" over the other party. *Id.* Typically, in an arm's length relationship, such as a consumer-type relationship where the party's have equal bargaining power, resulting superiority and influence does not exist. Therefore, neither party becomes the fiduciary of the other.

[32] As previously discussed, Plaintiffs allege that Y-USA engaged in a marketing and promotional campaign to establish YMCA facilities as being safe and healthy environments. As a result of that marketing, Plaintiffs allege that they placed a special confidence in the YMCA to provide such an environment for the members of YMCAs.[33]

[33] The court observes that Plaintiffs have not actually alleged in what manner a special confidence was placed in Y-USA, other than alleging that Plaintiffs joined one of the YMCAs. Entering into an arm's length contract does not satisfy the special confidence requirement necessary to allege a fiduciary relationship between the contracting parties. Additionally, Plaintiffs do not allege that Y-USA was in any superior bargaining position when Plaintiffs decided to purchase their YMCA membership. Furthermore, Plaintiffs do not allege that, once Plaintiffs were members of a YMCA, Y-USA had any superiority or influence over Plaintiffs. In short, Plaintiffs allege nothing more than a traditional business-consumer relationship between Plaintiffs and Y-USA.

[34] Plaintiffs assert that a fiduciary relationship can arise in North Carolina with the presence of special circumstances, chiefly, "where one party undertakes to

---

[33] *Id.* ¶ 60.

protect or act for the interests of another."[34]  Plaintiffs then cite a bevy of cases in which special circumstances created a fiduciary relationship.  These cases found fiduciary relationships where a son undertook to provide for the care and comfort of his ailing mother, *Holloway v. Holloway*, __ N.C. App. __, 726 S.E.2d 198 (2012), where an individual was listed as a joint account holder on the checking account of a close, personal friend in order to provide for the friend's daily care, *Dixon v. Gist*, __ N.C. App. __, 724 S.E.2d 639 (2012), where a divorced husband undertook to provide support for his ex-wife (also his cohabitant) for the remainder of her life, *Rhue v. Rhue*, 189 N.C. App. 29 (2008) and where one cotenant undertook to manage the common property of all cotenants, *Moore v. Bryson*, 11 N.C. App. 260 (1971).  In each of those cases, it was alleged that one party clearly undertook to control or direct the interests of the other party.  No such undertaking is alleged between Y-USA and Plaintiffs.  At bottom, all Plaintiffs allege is that Y-USA marketed YMCA facilities in a certain manner.  Such allegations are insufficient to allege the existence, much less the breach, of any recognized fiduciary duty in North Carolina.

[35]    As a result of the foregoing, the court CONCLUDES that Plaintiffs have failed to state a claim for breach of fiduciary duty against Y-USA.  Accordingly, with respect to the Second Claim, the Motion should be GRANTED.

<u>Third Claim</u>

[36]    Plaintiffs also assert a claim for breach of an implied-in-fact contract. Plaintiffs allege that Y-USA's promotional statements became the basis of the bargain

---

[34] Plaintiff's Reply at 14.

for Plaintiffs' membership agreements.[35]  Plaintiffs contend that Y-USA breached the contract by failing to provide safe facilities,[36] causing damages to Plaintiffs.[37]

[37]    To be valid, any contract, express or implied, must be the product of a "meeting of the minds" between the parties.  *Mach. Co. v. Chalkley*, 143 N.C. 181, 183 (1906).  In determining the terms or existence of any agreement, the court should not consider "what either one of the parties thought [the contract] was, but by what both agreed it should be."  *Id.*  North Carolina recognizes that a contract may be implied in fact where "the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts."  *Snyder v. Freeman*, 300 N.C. 204, 217 (1980).  To determine the terms contained in "a contract implied in fact, one looks not to some express agreement, but to the actions of the parties showing an implied offer and acceptance."  *Id*. at 218.  A contract implied in fact is enforceable as though it were express, but still requires the existence of mutual assent to the terms of the agreement.  *Miles v. Carolina Forest Ass'n*, 167 N.C. App. 28, 36 (2004).

[38]    Here, Plaintiffs have failed to allege any valid contract, express or implied, between Plaintiffs and Y-USA.  Plaintiffs only allege an express contract (i.e., the membership agreement) directly with Y-WNC.  Plaintiffs then allege that "Y-USA breached these contracts,"[38] referring to the membership agreement to which Y-USA was not a party.  All that has been alleged is that Y-USA marketed YMCA facilities and Plaintiffs interpreted the marketing statements as the basis of the bargain between Plaintiffs and Y-WNC.

---

[35] Am. Compl. ¶ 67.
[36] *Id.* ¶ 68.
[37] *Id.* ¶ 70.
[38] *Id.* ¶ 68.

[39]    Assuming that the express membership agreement with Y-WNC would not bar the finding of an implied contract with Y-USA under *Snyder*, Plaintiffs have still failed to allege any "meeting of the minds," or mutual assent, between Plaintiffs and Y-USA. An implied in fact contract requires an offer and acceptance. Plaintiffs do not allege any facts to the effect that Y-USA's marketing campaign was an implied offer to contract directly with Plaintiffs. Even if this court were to read Y-USA's marketing materials as an offer, Plaintiffs have alleged no acceptance or consideration for Y-USA's offer sufficient to imply mutual assent to the terms of any alleged agreement between Plaintiffs and Y-USA. Plaintiffs simply allege that they passively received Y-USA's marketing materials and, on that basis alone, a contract was formed as to the terms of the marketing campaign.

[40]    The court CONCLUDES that Plaintiffs have failed to state a claim for breach of an implied-in-fact contract with Y-USA. Accordingly, with respect to the Third Claim, the Motion should be GRANTED.

## Fourth, Fifth and Sixth Claims

[41]    Lastly, the Fourth Claim (Violation of G.S. 75.1-1), Fifth Claim (Breach of Fiduciary Duty) and Sixth Claim (Breach of Implied-in-Fact Contract) are the same Claims Plaintiffs alleged against Y-USA in Claims One, Two and Three. The only difference seems to be that the First, Second and Third Claims are alleged against Y-USA directly, whereas the Fourth, Fifth and Sixth Claims are alleged against all Defendants. Accordingly, for the same substantive reasons stated above, the court CONCLUDES that Y-USA's Motion should be GRANTED with respect to the Fourth, Fifth and Sixth Claims.

<u>Plaintiffs' Claims against Y-WNC Facilities</u>[39]

[42]    Taking the well-pleaded allegations of the Amended Complaint as true, it cannot be said that Plaintiffs sufficiently have alleged that the enumerated Y-WNC Facilities are independent entities.  Plaintiffs state that Y-WNC does business as a number of YMCA facilities in western North Carolina.[40]  The Amended Complaint merely lists as Defendants these facilities only "[t]o the extent Y-WNC does not own or control these entities . . . ."[41]

[43]    Nowhere in the Amended Complaint do Plaintiffs actually allege that Y-WNC Facilities are not owned or controlled by Y-WNC.  Furthermore, Plaintiffs do not allege that they directly entered into any contractual relationship with any of the Y-WNC Facilities.  Even under the most liberal construction of the Amended Complaint, it is clear that Plaintiffs do not assert any legal claim against any of the enumerated Y-WNC Facilities individually.

[44]    Rule 12(b)(6) allows dismissal of certain claims or an entire complaint if the allegations fail "to state a claim upon which relief can be granted."  Implicit in the Rule 12(b)(6) standard is the requirement that a claim must actually be asserted against a defendant before the sufficiency of the claim may be examined.  Here, Plaintiffs scarcely make reference to Y-WNC Facilities, and those references that do exist in the Amended Complaint do not state a claim but exist to serve another purpose

---

[39] As discussed *supra* note 2, on October 4, 2012, the court entered an Order on Motions to Dismiss and Compelling Mediation and Staying Action, dismissing Y-WNC Facilities from this civil action.  This portion of this Opinion and Order explains the court's reasoning for dismissing Y-WNC Facilities.
[40] Am. Compl. ¶ 4.
[41] *Id.*

altogether.[42]  Throughout the Amended Complaint and their memorandum in opposition to the Motions, Plaintiffs make reference to the allegations against Y-USA, Y-WNC and the "YMCA," which Plaintiffs define as Y-USA and Y-WNC, excluding the individual Y-WNC Facilities.[43]  Plaintiffs do not assert that Y-WNC Facilities are jointly, severally or alternatively liable on any of the theories of liability asserted against the "YMCA" or that Y-WNC Facilities are liable to Plaintiffs under any other theory of liability.

[45]  Accordingly, even if Plaintiffs sufficiently alleged that Y-WNC Facilities are separate entities, the addition of Y-WNC Facilities as Defendants, without asserting any claim against them, cannot withstand a motion to dismiss pursuant to Rule 12(b)(6).

[46]  For these reasons, the Y-WNC Motion should be GRANTED with regard to the Y-WNC Facilities.

NOW THEREFORE, based upon the foregoing FINDINGS and CONCLUSIONS, it hereby is ORDERED that:

[47]  Defendant National Council of the Young Men's Christian Association of the United States of America d/b/a YMCA of the USA's Motion to Dismiss is GRANTED with respect to the Plaintiffs' First, Second, Third, Fourth, Fifth and Sixth Claims, and said Claims are DISMISSED.

[48]  Defendants YMCA of Western North Carolina, Inc., Asheville YMCA, Corpening Memorial YMCA, Henderson County Family YMCA, Reuter Family YMCA and Neighborhood YMCA at Woodfin's Motion to Dismiss is GRANTED with respect to

---

[42] *See id.* ¶ 44 (using "Y-WNC Facilities" to define the Class); *see id.* ¶ 74 (noting only that "Y-WNC operates multiple YMCA facilities . . . ."); *see id.* ¶¶ 81, 87 (alleging that Y-USA and Y-WNC stand in a fiduciary relationship and entered into membership contracts "at Y-WNC facilities").
[43] *Id.* ¶ 5, n.1.

any and all Claims alleged in this civil action against these Defendants, and any Claims alleged against said Defendants are DISMISSED.

[49]     There remaining no viable Claims in this civil action, this matter hereby is DISMISSED.

[50]     Taxable costs in this matter are charged to Plaintiffs.

This the 18th day of July, 2013.