CHARLES M. WHITE AND EARL ELLIS, INDIVIDUALLY AND NOW OR FORMERLY D/B/A ACE FABRICATION AND WELDING, A NORTH CAROLINA GENERAL PARTNERSHIP, PLAINTIFFS v. ANDREW THOMPSON, DOUGLAS THOMPSON, AND FRAN LURKEE, ALIAS DEFENDANTS

No. COA08-953

(Filed 5 May 2009)

**1. Unfair Trade Practices— withdrawing partner—independent work—no affect on commerce**

The trial court erred by trebling the damage award in a partnership dispute under N.C.G.S. § 75-1.1. Defendant partner's independent work harmed the partnership but had no impact in the broader marketplace and did not affect commerce.

**2. Unfair Trade Practices— partnership dispute—outside accountant—services in commerce**

The trial court did not err in a partnership dispute by trebling damages under N.C.G.S. § 75-1.1 against a defendant who provided accounting services to the partnership. His actions cannot be characterized as matters of internal partnership management, but instead was the provision of a business service that may be considered an unfair practice in or affecting commerce.

**3. Evidence— damages—gross earnings—accountant's testimony—admissible**

The trial court did not err by allowing an accountant to testify in a partnership dispute about the gross earnings of a business formed by one of the partners who allegedly sought and performed work independently. The accountant was subject to cross-examination, and the evidence was sufficient to permit a reasonable calculation by the jury.

**4. Appeal and Error— abandonment of argument—contentions of appellant**

Defendants abandoned an argument on appeal concerning the acceptance of an accountant as an expert where they cited only nonbinding accounting standards and pointed to the portion of the transcript where the accountant was tendered and accepted as an expert. They made no substantive argument about why the accountant lacked independence.

**5. Damages and Remedies— evidence before jury—sufficiency for rational decision—award not excessive**

The trial court did not abuse its discretion by denying a motion for a new trial based on an allegedly excessive damage award where there was evidence sufficient for a reasonable, rational calculation of damages and there was no indication that the jury disregarded the trial court's instructions.

**6. Evidence— withdrawing partner—suggestions of theft from third party—questions relevant**

The trial court did not abuse its discretion in an action arising from a partnership dispute by allowing questions suggesting that a partner who allegedly sought and performed work independently was discharged from a job because he was caught stealing. The evidence was relevant to questions of usurped opportunities and lost profits.

Judge ERVIN concurring in part and dissenting in part.

Appeal by Defendants Andrew Thompson and Douglas Thompson from judgment entered 12 February 2008 by Judge Douglas B. Sasser in Superior Court, Columbus County. Heard in the Court of Appeals 10 February 2009.

*Lee & Lee, Attorneys, by Junius B. Lee, III, for plaintiffs.*

*Ralph G. Jorgensen, for defendants Andrew Thompson and Douglas Thompson.*

WYNN, Judge.

To establish a claim for unfair or deceptive trade practices, evidence must show that the alleged unfair or deceptive acts were in or affecting commerce.[1] Defendants Andrew Thompson and Douglas Thompson argue that because their alleged unfair and deceptive acts were not in or affecting commerce, the trial court erred by trebling the award of damages against them. We reverse as to Defendant Andrew Thompson (internal partnership acts not in or affecting commerce) but affirm as to Defendant Douglas Thompson (accounting acts in or affecting commerce).

In October 2000, Plaintiffs Charles M. White and Earl Ellis formed a partnership, "Ace Fabrication and Welding ("Ace Welding"), with

1. N.C. Gen. Stat. § 75-1.1 (2007).

Defendant Andrew Thompson. The partners agreed that each would be entitled to a third of the partnership's assets and hourly wages. Ace Welding hired Defendant Douglas Thompson (Defendant Andrew Thompson's father) to keep the partnership's accounting records. From the outset, Ace Welding won bids for several lucrative specialty fabrication projects at the Smithfield Packing Plant in Tarheel, North Carolina where Fran Lurkee was an "engineer over maintenance" and Carl Barnes was a superintendent.

The parties in this action presented contrasting positions on the nature of the partners' involvement in Ace Welding. Plaintiff White testified that, soon after Ace Welding began operating, he discovered Defendant Andrew Thompson working on jobs without informing or incorporating the other Ace Welding partners. He stated that Defendant Andrew Thompson misreported the days on which jobs were to begin, resulting in the other partners missing out on jobs altogether.

On the other hand, Defendant Andrew Thompson testified that his two partners were unavailable or left in the middle of jobs. He stated: "[I]t became apparent that I was going to have to do it all . . . ." He testified that he told his partners he wanted out of Ace Welding in January 2001.

However, Plaintiff White stated that he first learned of Defendant Andrew Thompson's desire to leave Ace Welding in February 2001. He stated that although Defendant Andrew Thompson denied that he was forming another company, Mr. Lurkee revealed that Defendant Andrew Thompson had decided to work independently and was bidding for jobs at the Smithfield Packing Plant under the business name of "Pal." Defendant Andrew Thompson acknowledged that near the end of February 2001, he was finishing "jobs in Ace Welding name and was also working in the Pal name."

Plaintiff White testified that Plaintiffs had problems trying to communicate with Defendants about Ace Welding's finances after determining that Defendant Andrew Thompson had done work without informing Plaintiffs. He stated after determining that "[s]ome of the money wasn't being deposited," he "went to the bank to move the money that was in the Ace Welding account . . . in a separate account until we got all this resolved."

At some point, the three men divided Ace Welding's tools, and Plaintiffs had an attorney draft a partnership withdrawal agreement;

however, none of the partners signed that agreement. Plaintiffs continued as partners under the name "Whelco" but ceased operations a couple of months after its formation. Pal continued to do jobs at the Smithfield plant until October 2001.

In October 2002, Plaintiffs brought this action alleging that Defendant Andrew Thompson breached his fiduciary duties; conspired with Mr. Lurkee and Mr. Barnes to usurp Ace Welding's opportunities;[2] and conspired with Defendant Douglas Thompson to improperly keep and maintain Ace Welding's accounting records. Plaintiffs also alleged that Defendants' acts amounted to unfair and deceptive trade practices.

The jury rendered a special verdict finding: 1) Defendant Andrew Thompson breached a fiduciary duty to Plaintiffs, resulting in $138,195 damages; 2) Defendant Douglas Thompson breached a fiduciary duty to Plaintiffs, resulting in $750 damages; and 3) Plaintiffs did not breach fiduciary duties they owed to Defendant Andrew Thompson. Thereafter, the trial court trebled the damages against Defendants.

On appeal, Defendants argue the trial court erred by: (I) trebling the awards under N.C. Gen. Stat. § 75-16 (2007); (II) allowing evidence from the court-appointed accountant about Defendant Andrew Thompson's gross earnings in Pal; (III) allowing biased testimony by the accountant; (IV) failing to set aside the jury's award of excessive damages which showed a manifest disregard for the court's instructions; and (V) permitting Plaintiffs' counsel to suggest that Defendant Andrew Thompson's employment at Smithfield was discontinued because he was caught stealing.

I.

[1] First, Defendants argue the trial court erred by trebling the damage awards because the partnership dispute did not meet the "in or affecting commerce" requirement of N.C. Gen. Stat. § 75-1.1 (2007), which states in relevant part:

(a) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.

2. Plaintiffs originally named Fran Lurkee and Carl Barnes as defendants. Neither are parties to this appeal. The trial court stated that "Carl Barnes was discharged in bankruptcy," and Plaintiffs did not appeal from the trial court's directed verdict in favor of Fran Lurkee.

(b) For purposes of this section, "commerce" includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession.

Our courts have construed the term "commerce" broadly, encompassing more than mere business activity between sellers and buyers. *Harrington Mfg., Inc. v. Powell Mfg., Inc.*, 38 N.C. App. 393, 396, 248 S.E.2d 739, 742 (1978) ("G.S. 75-1.1(b) speaks in terms of declaring and providing civil means of maintaining ethical standards of dealings 'between persons engaged in business,' as well as between such persons and the consuming public."). To establish a claim for unfair or deceptive trade practices, a party must present evidence showing: "(1) an unfair or deceptive act or practice by defendant, (2) in or affecting commerce, (3) which proximately caused actual injury to plaintiff." *Wilson v. Blue Ridge Elec. Membership Corp.*, 157 N.C. App. 355, 357, 578 S.E.2d 692, 694 (2003) (citations omitted). "The proper inquiry 'is not whether a contractual relationship existed between the parties, but rather whether the defendants' allegedly deceptive acts affected commerce.'" *Durling v. King*, 146 N.C. App. 483, 488-89, 554 S.E.2d 1, 4 (2001) (original emphasis) (citations omitted).

In this case, we agree that the claim against Defendant Andrew Thompson differs from the typical claim for unfair and deceptive trade practices because his relationship to Plaintiffs was a partner, not a competitor or consumer. Indeed, Plaintiffs alleged and sought to establish at trial that Defendant Andrew Thompson formed and worked for Pal while representing that he was seeking and completing jobs for Ace Welding; conspired with Smithfield management to "siphon off work originally contracted for by Ace Welding;" and conspired with Defendant Douglas Thompson to conceal Ace Welding's accounting records. These allegations relate to Defendant Andrew Thompson's breach of duties owed to the Ace Welding partnership.

The proper inquiry in an unfair or deceptive trade practices case is not on the nature of the contractual relationship between the parties; rather, it must be shown that the alleged unfair or deceptive acts had an impact in the marketplace. *See id.* ("What is an unfair or deceptive trade practice usually depends upon the facts of each case and the impact the practice has in the marketplace."). The allegations against Defendant Andrew Thompson do not amount to practices impacting the marketplace; instead, Plaintiffs complain of Defendant Andrew Thompson's breach of partnership duties—matters germane to the partners' contractual agreement to form and operate Ace

Welding. *Cf. Wilson*, 157 N.C. App. at 358, 578 S.E.2d at 694 ("Matters of internal corporate management, such as the manner of selection and qualifications for directors, do not affect commerce as defined by Chapter 75 and our Supreme Court.").

This Court confronted an unfair and deceptive trade practices claim in a partnership context in *Compton v. Kirby*, 157 N.C. App. 1, 577 S.E.2d 905 (2003). In *Kirby*, the partnership at issue was a real-estate brokerage firm. *Id.* at 4, 577 S.E.2d at 907. "One of the main goals of [the partnership] was to handle referrals" from an affili-ated company and to win additional business in the Raleigh market-place. *Id.* at 4-5, 577 S.E.2d at 908. The defendant-partner excluded the plaintiff-partners from multiple transactions, including the sale of a business, resulting in the defendant-partner becoming a prin-cipal owner in a company created to accomplish the stated partner-ship goals. *Id.* at 6-7, 577 S.E.2d at 909-10. This Court easily con-cluded that the defendant's actions were "in or affecting commerce" because they "revolved around the sale of a business," the availabil-ity of a real estate brokerage firm, "and the general marketing and sale of commercial real estate in [the Raleigh] market." *Id.* at 20, 577 S.E.2d at 917.

Plaintiffs' allegations and the evidence in this case are dissimilar to the real estate brokerage referrals and business sales that clearly impacted the marketplace in *Kirby*. Here, the evidence showed that Defendant Andrew Thompson sought and completed work at the Smithfield Packing Plant independently, or in the Pal business name, breaching his agreement to seek and complete the same work as an Ace Welding partner. Moreover, the Ace Welding partnership existed for the limited purpose of procuring and completing jobs at the Smithfield Packing Plant—a much narrower purpose than the multi-entity brokerage referrals that necessarily impacted the marketplace in *Kirby*. Nor did Defendant Andrew Thompson engage in any trans-actions, such as the sale of a business, that would inherently impact the marketplace. In sum, Defendant Andrew Thompson took for him-self opportunities at the Smithfield Packing Plant that he agreed to pursue with Plaintiffs in the Ace Welding partnership; this usurpation harmed Ace Welding and Plaintiffs, but had no impact in the broader marketplace. Accordingly, we reverse the trial court's award of treble damages against Defendant Andrew Thompson.

[2] On the other hand, Defendant Douglas Thompson was hired to provide accounting services to Ace Welding; therefore, he was not situated as a partner or a partnership insider such that his ac-

tions can be characterized as matters of internal partnership management. Instead, Defendant Douglas Thompson was engaged in the business activity of providing accounting services to the partnership, and his actions may be considered unfair practices "in or affecting commerce."

Furthermore, because the jury determined that Defendant Douglas Thompson breached a fiduciary duty, not a mere contractual duty, we summarily reject his contention that mere breach of contract is insufficient to show an unfair trade practice. *See S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008) ("A fiduciary relationship 'exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.' "). Accordingly, we uphold the trial court's award of treble damages against Defendant Douglas Thompson.

II.

**[3]** Defendants next argue that the trial court erred by allowing the accountant to testify to Pal's gross earnings, as opposed to net earnings or profits, after Ace Welding dissolved. We disagree.

"The party seeking damages bears the burden of proving them in a manner that allows the fact-finder to calculate the amount of damages to a reasonable certainty." *Beroth Oil Co. v. Whiteheart*, 173 N.C. App. 89, 95, 618 S.E.2d 739, 744 (2005) (citations omitted), *disc. review denied*, 360 N.C. 531, 633 S.E.2d 674 (2006). "Substantial damages may be recovered though plaintiff can only give his loss proximately." *Id.* So long as the party claiming damages introduces sufficient evidence to permit a reasonable calculation, the fact finder may be left to determine the proper measure of damages. *See id.* at 96, 618 S.E.2d at 745.

Here, Defendants take issue with the trial court's allowance of evidence of Pal's gross earnings, contending that "the correct measure of damages is the net profit of the business . . . ." However, the accountant was subject to cross-examination and also testified to expenses and payments Defendant Andrew Thompson made from the Ace Welding account and the Pal account. Moreover, Plaintiff White testified that he typically recouped 60% of his gross earnings as profits; this testimony suggested that figure as a useful comparison to Defendant Andrew Thompson's profits with Pal.

·All the testimony concerning Pal's earnings after Ace Welding's dissolution, taken together with Defendants' opportunity to cross-examine the accountant, provided "sufficient evidence to permit a reasonable calculation" by the jury. *Id.* Moreover, the jury awarded substantially less in damages against Defendants. than the amount Plaintiffs argued was lost to usurped opportunities. Therefore, the trial court did not err by allowing the accountant to testify regarding Pal's gross earnings in 2001.

## III.

**[4]** Defendants next argue the trial court erred by allowing the accountant to testify because she lacked independence and was biased. However, in their brief, Defendants cite only nonbinding accounting standards rules and point to the portion of the transcript where the accountant was tendered and accepted as an expert. Defendants make no substantive argument before this Court regarding why the accountant lacked independence. Therefore, we must hold that Defendants abandoned this issue pursuant to N.C. R. App. P. 28(b)(6) (argument section of the brief should contain "the contentions of the appellant with respect to each question presented.").

## IV.

**[5]** Next, Defendants argue the trial court erred by denying their motion for a new trial under N.C. Gen. Stat. 1A-1, Rule 59(a)(5) & (6) (2007) because the jury's award of damages was excessive and showed a manifest disregard for the court's instructions. We disagree.

Under Rule 59(a)(6), a trial court may grant a new trial on the ground that the jury awarded excessive damages under the influence of passion or prejudice. N.C. Gen. Stat. § 1A-1, Rule 59(a)(6) (2007). We review the trial court's decision whether to grant a new trial on this basis for an abuse of discretion; however, the trial court's discretion is "practically unlimited." *Decker v. Homes, Inc.*, 187 N.C. App. 658, 665, 654 S.E.2d 495, 500 (2007).

Defendants contend that the award against Defendant Andrew Thompson was "speculative," and there was "no rational basis" to support the award against Defendant Douglas Thompson. We have already concluded above that testimony given by the accountant and Plaintiff White was sufficient to permit the jury's reasonable calculation of the damages caused by Defendant Andrew Thompson's breach of fiduciary duty to the Ace Welding partnership.

Likewise, the jury heard testimony from Defendant Douglas Thompson and other witnesses concerning his keeping of Ace Welding's accounting records, and his failure to respond to Plaintiffs' requests to settle accounting disputes. Considering that tax statements, check receipts, bank statements, and other accounting documents were submitted for the jury's consideration, we cannot agree that the jury had "no rational basis" to calculate an award of damages against Defendant Douglas Thompson.

Nor is there any indication in the record that the jury disregarded the trial court's instructions. The trial court gave specific instructions on how the jury should interpret each interrogatory, and there were no inconsistencies on the verdict sheet or in the verdict itself that would suggest the jury disregarded the trial court's instructions. Accordingly, the record shows that the trial court was well within its discretion to deny Defendants' motion for a new trial.

V.

[6] Finally, Defendants contend the trial court erred by permitting Plaintiffs' counsel to suggest that Defendant Andrew Thompson's employment at Smithfield was discontinued because he was caught stealing. We disagree.

During Defendant Andrew Thompson's cross-examination, Plaintiffs' counsel initiated the following exchange:

Q: Can I have just a minute. Now when did Pal, the business that you formed, the unincorporated business that you formed, Pal, when did it quit doing work at Smithfield?

A: I'm not sure of the date. I think it was around October.

Q: Why did it quit doing business at Smithfield?

A: Because [Charles White] and Earl was running around with those checks that you just called out saying that I was paying bribes and bid rigging and bribery and got me fired.

Q: That's not the real reason, is it, sir?

A: Yes sir.

Q: You got caught stealing from the plant, didn't you?

A: No sir.

Thereafter, defense counsel objected, moved to strike, and requested a bench conference. After the bench conference, the trial court over-ruled the objection and permitted the cross-examination to continue.

Defendants argue that Plaintiffs' counsel's question was irrele-vant under N.C. Gen. Stat. § 8C-1, Rule 401. Under Rule 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more prob-able or less probable. . . ." N.C. Gen. Stat. § 8C-1, Rule 401 (2007).

Here, evidence of the reason for Defendant Andrew Thompson's discontinued employment at Smithfield was relevant to the extent of opportunities usurped from Ace Welding and the resulting lost prof-its—the main issues in the case. Therefore, the evidence bore sub-stantial probative value and minimal risk of confusing the issues, mis-leading the jury, or unfairly prejudicing Defendants. Accordingly, the trial court did not abuse its discretion in allowing Plaintiffs' counsel to ask questions concerning an alleged theft from Smithfield.

In summation, we reverse the award of treble damages imposed against Defendant Andrew Thompson, and otherwise affirm the trial court's judgment.

Affirmed in part; reversed in part.

Judge ROBERT C. HUNTER concurs.

Judge ERVIN concurs in part and dissents in part.

ERVIN, Judge, concurring in part and dissenting in part.

Although I concur in the remainder of the Court's opinion, I respectfully dissent from the majority's conclusion that the trial court erred by trebling the jury's damage award against Defendant Andrew Thompson pursuant to N.C. Gen. Stat. § 75-1.1, *et seq.* As a result, I would affirm the judgment entered by the trial court in its entirety.

N.C. Gen. Stat. § 75-1.1(a) provides that "[u]nfair methods of com-petition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." "In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and

(3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001).

"Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) (citation omitted). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Johnson v. Insurance Co.*, 300 N.C. 247, 263, 266 S.E.2d 610, 621 (1980), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988); *see also Boyd v. Drum*, 129 N.C. App. 586, 501 S.E.2d 91 (1998), *disc. rev. den.* 349 N.C. 227, 515 S.E.2d 699 (1998), *affd.* 350 N.C. 90, 511 S.E.2d 304 (1999). As a general proposition, a practice is deceptive if it "possessed the tendency or capacity to mislead, or created the likelihood of deception[.]" *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403; *see also Dalton*, 353 N.C. at 656, 548 S.E.2d at 711 (stating that "[a] practice is unfair if it is unethical and unscrupulous, and it is deceptive if it has a tendency to deceive"). "[C]onduct which constitutes breach of a fiduciary duty and constructive fraud is sufficient to support a UFDTP claim." *Compton v. Kirby*, 157 N.C. App. 1, 20, 577 S.E.2d 905, 917 (2003).

"Commerce," as that term is used in N.C. Gen. Stat. § 75-1.1(a), "includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b). " 'Business activities' is a term which connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." *HJAMM Co. v. House of Raeford Farms*, 328 N.C. 578, 594, 403 S.E.2d 483, 493 (1991). Liability under N.C. Gen. Stat. § 75-1.1 is not limited "to cases involving consumers" or to claims between businesses that "concern[] fraudulent advertising and buyer-seller relationships." *United Laboratories, Inc. v. Kuykendall*, 322 N.C. 643, 665, 370 S.E.2d 375, 389 (1988); *see also, Dalton*, 353 N.C. at 656, 548 S.E.2d at 711. " 'Commerce" in its broadest sense comprehends intercourse for the purposes of trade in any form." *Sara Lee Corp. v. Carter*, 351 N.C. 27, 32, 519 S.E.2d 308, 311 (1999) (quoting *Johnson*, 300 N.C. at 261, 266 S.E.2d at 620 (internal quotation omitted)). "Although this statutory definition is expansive, the Act is not intended to apply to all wrongs in a business setting."

*HJAMM Company*, 328 N.C. at 593, 403 S.E.2d at 492. For example, N.C. Gen. Stat. § 75-1.1 does not apply to "most employer-employee disputes." *Dalton*, 353 N.C. at 657, 548 S.E.2d at 711; *see also Gress v. The Rowboat* Co., — N.C. App. —, —, 661 S.E.2d 278, 281-82 (2008); *Buie v. Daniel International*, 56 N.C. App. 445, 289 S.E.2d 118 (1982), *dis. rev. den.*, 305 N.C. 759, 292 S.E.2d 574 (1982).

As I understand the Court's decision, the majority has concluded that no unfair and deceptive trade practices claim is available against Defendant Andrew Thompson under the facts at issue here because "[t]he allegations against [him] do not amount to practices impacting the marketplace" and because the dispute between the parties amounts to a matter of internal partnership management. I cannot agree with either of these conclusions.

As I have already noted, a successful claim under N.C. Gen. Stat. § 75-1.1 is, contrary to Defendant Andrew Thompson's apparent contention, available in situations other than those involving disputes between consumers and businesses. *United Laboratories*, 322 N.C. at 665, 403 S.E.2d at 492. All that has to be shown in support of a successful claim under N.C. Gen. Stat. § 75-1.1 is the existence of an unfair or deceptive act in or affecting commerce that proximately caused injury to Plaintiffs.

At trial, the jury appears to have credited Plaintiffs' evidence that Defendant Andrew Thompson, while engaged in a partnership with Plaintiffs, obtained certain specialty fabrication jobs at the Smithfield Packing plant in Tarheel for himself rather than for the partnership. In order to achieve this result, Plaintiffs' evidence suggested that Defendant Andrew Thompson gave his partners incorrect information concerning the date on which those jobs were to begin.

Impairing the ability of others to compete for work in this fashion is tantamount to unfair competition, a type of conduct which is clearly actionable under N.C. Gen. Stat. § 75-1.1. *Manufacturing Co. v. Manufacturing Co.*, 38 N.C. App. 393, 400, 248 S.E.2d 739, 744 (1978), *dis. rev. den.*, 296 N.C. 411, 251 S.E.2d 469 (1979) (stating that "[u]nfair competition has been referred to in terms of conduct 'which a court of equity would consider unfair' " (quoting *Extract Co. v. Ray*, 221 N.C. 269, 273, 20 S.E.2d 59, 61 (1942)). The effect of such conduct was to deprive the partnership of the ability to actually perform certain specialty fabrication jobs for Smithfield Packing, a fact which clearly implicates the "activities the business regularly engages in and for which it [was] organized." *HJAMM Company*, 328 N.C. at 594, 403

S.E.2d at 493. Furthermore, depriving the partnership of the opportunity to perform these specialty fabrication jobs inevitably affected its financial viability, producing an inevitable impact on competitive conditions in the market for the performance of specialty fabrication jobs in the area served by the partnership. *United Laboratories*, 322 N.C. at 665, 403 S.E.2d at 389 (stating that "[a]fter all, unfair trade practices involving only businesses affect the consumer as well").

The Court concludes, based upon an analysis of this Court's decision in *Compton*, that, while actions " 'revolv[ing] around the sale of a business,' the availability of a real estate brokerage firm, 'and the general marketing and sale of commercial real estate in [the Raleigh] market" are "in commerce" *quoting Compton*, 157 N.C. App. at 20, 577 S.E.2d at 917, the record in this case merely shows that Defendant Andrew Thompson "sought and completed work at the Smithfield Packing Plant independently, in the Pal business name, breaching his agreement to seek and complete the same work as an Ace Welding partner;" that "the Ace Welding partnership existed for the limited purpose of procuring and completing jobs at the Smithfield Packing Plant—a much narrower purpose than the multi-entity brokerage referrals that necessarily implicated the marketplace in [*Compton*];" and that Defendant Andrew Thompson did not "engage in any transactions, such as the sale of a business, that would inherently impact the marketplace." As a result, although the Court concedes that "Defendant Andrew Thompson took for himself opportunities at the Smithfield Packing Plant that he agreed to pursue with Plaintiffs in the Ace Welding partnership," it concludes that "this usurpation harmed Ace Welding and Plaintiffs, but had no impact in the broader marketplace." I cannot, unfortunately, agree with the Court's approach or this conclusion. ·

First, the Court's analysis suggests that satisfying the "in commerce" element of a claim lodged pursuant to N.C. Gen. Stat. § 75-1.1 requires proof that a particular unfair and deceptive trade practice had a certain quantitative impact. I do not believe that there is any such requirement in either the literal language of the statute, which merely requires that the relevant conduct be "in or affecting commerce," or in the decisions of the Supreme Court and this Court construing N.C. Gen. Stat. § 75-1.1. On the contrary, this Court specifically held in *Kent v. Humphries*, 50 N.C. App. 580, 589, 275 S.E.2d 176, 183 (1981), *mod. on other grounds and aff'd* by 303 N.C. 675, 281 S.E.2d 43 (1981), that "the leasing of just one commercial lot satisfied · the Chapter 75 requirement of being in or affecting commerce." · *Wilder v. Hodges*, 80 N.C. App. 333, 334, 342 S.E.2d 57, 58 (1986); *see*

*also Adams v. Moore*, 96 N.C. App. 359, 361, 385 S.E.2d 799, 801 (1989), *dis. rev. den.*, 326 N.C. 46, 389 S.E.2d 83 (1990) (concluding that allegations relating to the sale of a single residence are sufficient to withstand a motion to dismiss for failure to state a claim where there was no showing that defendants did not "buy and sell houses as a business"); *Robertson v. Boyd*, 88 N.C. App. 437, 444, 363 S.E.2d 672, 677 (1988) (concluding that a transaction involving the sale of a single residence is sufficiently "in commerce" to support claims against a pest control business and a real estate agency under N.C. Gen. Stat. § 75-1.1); *Love v. Pressley*, 34 N.C. App. 503, 516, 239 S.E.2d 574, 582-83 (1977), *dis. rev. den.*, 299 N.C. 441, 241 S.E.2d 843 (1978) (concluding that an incident involving the lease of a single residence was sufficient to support a finding of liability under N.C. Gen. Stat. § 75-1.1). Thus, I do not believe that the Court's emphasis upon what it believes to be the relatively limited economic impact of Defendant Andrew Thompson's conduct rests on a correct understanding of the "in commerce" element of an unfair and deceptive trade practices claim.

Secondly, unlike the majority, I do not believe that there is any material difference between the conduct found to be "in commerce" in *Compton* and the conduct at issue here. As noted above, the conduct of Defendant Andrew Thompson affected the nature and extent of the market in which Smithfield Packing procures speciality fabrication products. Moreover, the record suggests that Defendant Andrew Thompson's activities resulted in the elimination of Ace Welding as a viable competitor in that market. Finally, although the record suggests that Ace Welding was formed for the purpose of providing speciality fabrication products to Smithfield Packing, its inability to survive necessarily affected the broader market for speciality fabrication products in the area in which Ace Welding chose to operate. I do not believe that there is any qualitative difference between the sale of a competitor in the Raleigh real estate market at issue in *Compton* and the elimination of a potential competitor in the speciality fabrication business in the area around the Smithfield Packing plant. Furthermore, I do not believe that there is any material difference between the "availability of a real estate brokerage firm in Raleigh" at issue in *Compton* and the availability of the speciality fabrication business at issue here. Finally, while the Raleigh real estate market may be larger than the market for the provision of speciality fabrication products to the Smithfield Packing plant, there is no qualitative difference between the impact of the conduct at issue in *Compton* on the Raleigh real estate market and the impact of Defend-

ant Andrew Thompson's conduct on the market for the provision of speciality fabrication products to Smithfield Packing. Thus, for all of these reasons, I believe that there has been a more than adequate showing of an impact on "commerce" in this case and that the Court has erred by both requiring a showing of some quantitative market impact and by concluding that the evidence in this case fails to show that the actions of Defendant Andrew Thompson were "in and affecting commerce[.]"

Furthermore, this case does not involve either a pure employer-employee dispute, *see Dalton*, 353 N.C. at 656-58, 548 S.E.2d at 710-12 (concluding that there was no liability where an employee who had neither a fiduciary relationship with his employer nor functioned as a buyer or seller entered into a contract to publish a magazine for the employer's customer in a situation involving no aggravating circumstances), or an internal business governance controversy, *see Wilson v. Blue Ridge Electric Membership Corp.*, 157 N.C. App. 355, 358, 578 S.E.2d 692, 694 (2003) (concluding that there was no claim under N.C. Gen. Stat. § 75-1.1 where employer changes rules governing eligibility for service on employer's board of directors since "[a]lteration of [employer's] by-laws . . . is not a day-to-day, regular business activity"). Here, however, we face a very different situation in which one partner has been found by a jury to have diverted an opportunity that should have been available to the partnership for his own gain.

As a result of the fact that a partner in a partnership has a fiduciary relationship with his or her partners, *see Casey v. Grantham*, 239 N.C. 121, 124-25, 79 S.E.2d 735, 738 (1954), self- dealing and similar activities constitute breach of a partner's fiduciary obligations. *Reddington v. Thomas*, 45 N.C. App. 236, 262 S.E.2d 841 (1980). "[A] breach of a fiduciary duty amounts to constructive fraud," which is sufficient to support an unfair and deceptive trade practices claim. *Compton*, 157 N.C. App. at 16, 577 S.E.2d at 914. Under similar logic, this Court upheld a finding of liability under N.C. Gen. Stat. § 75-1.1 against a partner who sold the partnership business to a third party without the consent of his partners or without informing the purchaser that the other partners had an ownership interest in the business. *Compton*, 157 N.C. App. at 19-20, 577 S.E.2d at 916-18; *see also Carter*, 351 N.C. at 31-34, 519 S.E.2d at 311-12 (concluding that an employee who was responsible for purchasing computer hardware and services at the best possible price for his employer, and who had a fiduciary duty to his employer, was properly found liable where he

purchased computer parts and services from businesses he controlled for his employer at an excessive price); *Adams*, 96 N.C. App. at 362, 385 S.E.2d at 801 (concluding that two ministers, who had agreed to assist the plaintiff with her financial problems by taking title to and making a payment on her residence and then sold the residence for a large profit, owed a fiduciary duty to the plaintiff and were subject to liability under N.C. Gen. Stat. § 75-1.1 ·because their alleged conduct constituted a violation of a fiduciary duty to the plaintiff).

I believe that the evidence in the present record amply supports a finding that Defendant Andrew Thompson engaged in acts that amount to constructive fraud, a type of conduct which clearly supports a finding of liability under N.C. Gen. Stat. § 75-1.1. The fact that Defendant Andrew Thompson's conduct involves a breach of fiduciary duty also renders the general rule that a mere breach of contract without aggravating circumstances does not support a finding of liability under N.C. Gen. Stat. § 75-1.1, *see Johnson v. Colonial Life & Accident Insurance Co.*, 173 N.C. App. 365, 370, 618 S.E.2d 867, 871 (2005), *disc. rev. den.*, 360 N.C. 290, 627 S.E.2d 620 (2006), inapplicable. Thus, for all of these reasons, I am unable to accept the Court's conclusion that Defendant Andrew Thompson's activities were not in "commerce" because of the fact that he was involved in a partnership relationship with the Plaintiffs.

As a result, I believe that the evidence received at trial fully supports the trial court's conclusion that Defendant Andrew Thompson's conduct was actionable under N.C.. Gen. Stat. § 75-1.1. Thus, I respectfully dissent from that portion of the Court's opinion reversing the trial court's award of treble damages against Defendant Andrew Thompson. As noted above, however, I do concur in the remainder of the Court's opinion.