Loyd v. Griffin, 2021 NCBC 51.

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| IREDELL COUNTY | 20 CVS 2394 |

ASHTON K. LOYD,

        Plaintiff,

v.

JAMES MICHAEL GRIFFIN and
GRIFFIN INSURANCE AGENCY,
INC.,

        Defendants.

**ORDER AND OPINION ON
PLAINTIFF'S MOTION TO DISMISS
DEFENDANTS' COUNTERCLAIMS**

1. **THIS MATTER** is before the Court on Plaintiff Ashton K. Loyd's ("Loyd") Motion to Dismiss (the "Motion") filed on 28 January 2021. (Pl. Mot. Dismiss, ECF No. 32 [hereinafter "Mot."].) Loyd seeks complete dismissal of all the Defendants' James Michael Griffin ("Griffin") and Griffin Insurance Agency, Inc. ("GIA") (together, "Defendants") counterclaims against Loyd (the "Counterclaims"). (Defs.' Answer Pl.'s Compl. and Countercls., ECF No. 14 [hereinafter "Countercls."].)

2. For the reasons set forth in this Order and Opinion, the Court hereby **DENIES** the Motion.[1]

> *Levine Law Group, P.A. by Michael J. Levine and Cathy A. Williams,*
> *Austin Law Firm, PLLC by John S. Austin, and Mauney, PLLC by Gary*
> *V. Mauney for Plaintiff Ashton K. Loyd.*[2]

---

[1] The Court does not address any of Defendants' arguments in support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 36) or Defendants' Motion to Strike (ECF No. 38) in this Opinion. A separate Order and Opinion will follow at a later date addressing Defendants' pending motions.

[2] John S. Austin of Austin Law Firm, PLLC, and Gary V. Mauney of Mauney, PLLC, entered appearances on behalf of Loyd on 5 August 2021. (ECF Nos. 67–68.) Mr. Austin and Mr. Mauney did not represent Loyd at the time of the hearing held on 22 April 2021 on Loyd's Motion to Dismiss Defendants' Counterclaims. (*See* ECF No. 51.)

*Bennett & Guthrie, PLLC by Mitchell Hendrix Blankenship and Joshua H. Bennett for Defendants James Michael Griffin and Griffin Insurance Agency, Inc.*

Robinson, Judge.

## I.     INTRODUCTION

3.     Loyd moves to dismiss the Counterclaims alleged by Defendants in this action for: breach of fiduciary duty (Count I); breach of contract and breach of warranty based on the Merger Agreement (Count II); fraud (Count III); unfair or deceptive trade practices ("UDTP") in violation of Section 75-1.1 of the N.C. General Statutes (Count V); breach of contract based on the Associate Agent Agreement (Count VI); and breach of contract and specific performance based on the Shareholders' Agreement (Count VII).

## II.     PROCEDURAL BACKGROUND

4.     Loyd initiated this action by filing his Complaint on 25 September 2020. (Compl., ECF No. 3.)  The case was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina and assigned to the undersigned on 26 October 2020.  (Design. Order and Assign. Order, ECF Nos. 1–2.)

5.     On 25 November 2020 Defendants filed the Counterclaims.

6.     Loyd filed his Answer to Defendants' Counterclaim on 28 January 2021 (Pl.'s Mot. Dismiss, Defenses and Answer Def. Countercls., ECF No. 34.)

7.     Loyd also filed the Motion to Dismiss on 28 January 2021.  The Motion has been fully briefed.  (Pl. Br. Supp. Mot. Dismiss, ECF No. 33 [hereinafter "Mem.

Supp."]; Defs.' Br. Opp'n Pl. Mot. Dismiss Defs.' Countercls., ECF No. 44 [hereinafter "Mem. Opp'n"].)

8. On 19 January 2021 Defendants voluntarily dismissed without prejudice their counterclaim against Loyd for Rescission of Merger and Shareholders' Agreements (Count IV). (Defs.' Notice Part. Volunt. Dismiss. Without Prej., ECF No. 30.) Loyd filed his First Amended Complaint on 11 January 2021. (First Am. Compl., ECF No. 29.) Defendants filed their Answer to Plaintiff's First Amended Complaint on 29 January 2021 and therein realleged the remaining Counterclaims contained in their earlier Answer. (Defs.' Answer Pl.'s First Am. Compl. 18, ECF No. 40 [hereinafter "Answer"].) The remaining Counterclaims are still pending and are subject to this Motion.

9. On 22 April 2021, the Court held a hearing by video conference on the Motion, at which all parties were represented by counsel (the "Hearing").

10. The Motion has been converted from a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim upon which Relief may be Granted to a Rule 12(c) Motion for Judgment on the Pleadings with the consent of all parties' counsel in this matter which was provided at the hearing on 22 April 2021.[3]

---

[3] This Court noted in *Handi-Clean Products v. Momar, Inc.,* 2021 NCBC LEXIS 35 (N.C. Super. Ct. Apr. 6, 2021), that the N.C. Business Court has held that if a Rule 12(b)(6) Motion to Dismiss and Answer are filed contemporaneously, it is no longer appropriate for the Court to consider the Rule 12(b)(6) Motion to Dismiss because the Rules of Civil Procedure require that the motion come before the answer or else it is untimely. *See also New Friendship Used Clothing Collection, LLC v. Katz,* 2017 NCBC LEXIS 72, at *24–25 (N.C. Super. Ct. Aug. 18, 2017); *Johnston v. Johnston Props., Inc.,* 2018 NCBC LEXIS 119, at *13 (N.C. Super. Ct. Nov. 15, 2018). Here, the Motion and Plaintiff's Defenses and Answer to Defendants' Counterclaim (ECF No. 34) were both filed on 28 January 2021 at 4:09:57 p.m., and therefore consideration of the 12(b)(6) Motion would be improper in this matter.

11. The Motion is now ripe for resolution.

## III. FACTUAL BACKGROUND

12. The Court does not make findings of fact on a Rule 12(c) motion for judgment on the pleadings. The following factual background is drawn from the pleadings and matters of record that are properly considered, relevant, and necessary to the Court's consideration of the Motion.[4]

### A. **The Parties**[5]

13. Loyd is a resident of Iredell County, North Carolina. (Answer ¶ 1.) At all relevant times, Loyd was an officer and Vice President of GIA. (Answer ¶ 1.)

14. Griffin is a resident of Mecklenburg County, North Carolina. (Answer ¶ 2.) At all relevant times, Griffin was President of GIA. (Answer ¶ 2.)

15. GIA is a North Carolina corporation with a principal office located at 135 Gasoline Alley, Iredell County, North Carolina. (Answer ¶ 3.)

### B. **Defendants' Agreements with Plaintiff**

16. On 1 January 2004, Plaintiff began working at GIA as an associate agent. (Countercls. ¶ 4.)

17. Around 2010, the parties agreed for Plaintiff to "gain an equity stake in GIA" by paying for ownership with part of his future commissions. (Countercls. ¶ 5.)

---

[4] The Court in deciding this Motion will consider only such matters as raised by the pleadings in this case per Rule 12(c). Anything referenced in briefing by the parties, at the hearing, or otherwise that was not contained in the pleadings on record in this matter was not considered in the issuance of this Order and Opinion.
[5] On 6 January 2021 Plaintiff voluntarily dismissed all its claims against Jacqueline Sipe; therefore, she is not referenced in this section detailing parties to this action. (Notice Volunt. Dismiss. Without Prej. Def. Jacqueline Sipe, ECF No. 27.)

18. In 2012, Plaintiff signed an Associate Agent Agreement wherein he "agree[d] to comply with all applicable insurance laws and regulations." (Countercls. ¶ 58.) Defendants allege further that Plaintiff became a Vice President of GIA and therefore "owed fiduciary duties to . . . GIA." (Countercls. ¶ 22.)

19. Defendants assert that by 2018 it was clear that Plaintiff was unable to fulfill his agreement to pay for his purchase of an ownership interest under the financing arrangement. (Countercls. ¶ 6.)

20. To address Plaintiff's alleged inability to pay, Defendants assert the parties entered into a Merger Agreement where "Plaintiff's company, Loyd Insurance Agency, would merge with Defendant GIA." (Countercls. ¶ 6.)

21. According to the Agreement and Plan of Merger (the "Merger Agreement"), "Plaintiff Loyd represented and warranted that 'Loyd has complied with and is not in default in any material respect under any laws, ordinances, requirements, regulations, or orders applicable to its business.' " (Countercls. ¶ 7.) The agreement further provided "that the representations and warranties made in [the applicable section of the Merger Agreement] 'shall survive the Effective Date' of the merger." (Countercls. ¶ 7.)

22. The Defendants allege they "would not have agreed to merge with the Plaintiff and his business without the[se] representations[.]" (Countercls. ¶ 32.)

C. **Search for GIA Buyer**

23.     Defendants assert that "[i]n or around the fall of 2019 . . . Defendant Griffin wanted to sell GIA because he was looking to retire in the near future."  (Countercls. ¶ 10.)

24.     In the discussions to sell GIA, Defendants allege Plaintiff played an "integral" role and was "presented to potential buyers as Mr. Griffin's successor who would ensure GIA's continued success once Defendant Griffin had retired." (Countercls. ¶ 10.)

D. **Alleged False Certificates of Insurance**

25.     Defendants assert that "through a routine desk audit" in February 2020, "it was discovered" that Plaintiff "issued numerous false certificates of insurance over the course of the past several years, both before and after the merger of Loyd Insurance Agency and GIA."  (Countercls. ¶ 11.)  Defendants also allege these certificates were "for policies that either did not exist or for which the type or extent of coverage represented under the policy did not exist."  (Countercls. ¶ 11.)

26.     Defendants notified Nationwide about the alleged false certificates. (Countercls. ¶ 12.)

27.     Defendants assert that in Nationwide's own review, it found that Plaintiff or "his subordinates at his direction" issued more than 50 false certificates. (Countercls. ¶ 13.)  According to Defendants, just as Defendants had found, Nationwide found that some "certificates referenced policies that did not exist and in

other instances referenced existing policies but falsely misrepresented the coverages and/or limits on the policies." (Countercls. ¶ 13.)

28. Defendants allege that, due to the alleged fraudulent certificates, "Nationwide cancelled Plaintiff's appointment 'for cause' and, as required by law, notified the North Carolina Department of Insurance of Plaintiff's activities. The 'for cause' cancellation of Plaintiff's appointment meant that he was no longer allowed to sell or solicit Nationwide Insurance products." (Countercls. ¶ 14.)

29. Defendants further allege, "[a]s a result of Plaintiff's fraudulent conduct and Nationwide's cancellation of his appointment to sell insurance, Plaintiff's employment with Defendant GIA was terminated." (Countercls. ¶ 15.)

30. Additionally, Defendants allege the North Carolina Department of Insurance began investigating GIA "[a]s a result of the Plaintiff's fraudulent conduct[.]" (Countercls. ¶ 16.) "Defendants were therefore required to notify potential buyers of Defendant GIA of the Plaintiff's fraudulent activities and the North Carolina Department of Insurance's investigation into Defendant GIA." (Countercls. ¶ 17.)

31. Defendants claim that after sending the required notice to potential buyers, there was only one prospective purchaser of GIA that did not reduce or rescind entirely its offer to buy GIA. (Countercls. ¶ 18.)

32. Defendants allege that "the remaining offer required GIA to provide a large warranty indemnity policy and a large withholding of funds to be held in escrow to cover potential future liabilities." (Countercls. ¶ 18.)

33. Defendants allege the falsified certificates caused "extensive damage to [GIA's] reputation and overall valuation." (Countercls. ¶ 60.) Defendants also assert that the extent of GIA's future liability for the alleged falsified certificates is "not fully known." (Countercls. ¶ 60.) Additionally, Defendants allege that "Plaintiff has thus far refused to assist Defendants and Nationwide in identifying each and every false Certificate of Insurance[.]" (Countercls. ¶ 19.)

34. Defendants assert the GIA Shareholders' Agreement requires a GIA shareholder such as Plaintiff to sell his shares back to GIA when he is no longer employed with GIA. (Countercls. ¶ 66.) Defendants allege "GIA has fulfilled all conditions precedent to the Shareholders' Agreement and remains ready, willing, and able to purchase the Plaintiff's equity stake[;]" however, "Plaintiff has refused to sell his ownership interest to Defendant GIA for the Purchase Price." (Countercls. ¶¶ 71–72.)

35. Based on Plaintiff's alleged misconduct as set out above, Defendants have brought the Counterclaims for: breach of fiduciary duty (Count I); breach of contract and breach of warranty based on the Merger Agreement (Count II); fraud (Count III); unfair or deceptive trade practices ("UDTP") in violation of Section 75-1.1 of the N.C. General Statutes (Count V); breach of contract based on the Associate Agent Agreement (Count VI); and breach of contract and specific performance based on the Shareholders' Agreement (Count VII).

## IV.  LEGAL STANDARD

36.  "A motion for judgment on the pleadings should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Carpenter v. Carpenter*, 189 N.C. App. 755, 761 (2008).  On a Rule 12(c) motion, "[t]he movant is held to a strict standard and must show that no material issue of facts exists and that he is clearly entitled to judgment." *Ragsdale v. Kennedy*, 286 N.C. 130, 137 (1974).  "[T]he court cannot select some of the alleged facts as a basis for granting the motion on the pleadings if other allegations, together with the selected facts, establish material issues of fact." *J. F. Wilkerson Contracting Co. v. Rowland*, 29 N.C. App. 722, 725 (1976).  The Court must read the pleadings in the light most favorable to the nonmoving party, and

> [a]ll well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false.  All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

*Ragsdale*, 286 N.C. at 137 (citations omitted).

37.  "Judgment on the pleadings is not favored by the law[.]" *Huss v. Huss*, 31 N.C. App. 463, 466 (1976).  The function of Rule 12(c) "is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale*, 286 N.C. at 137.  "[J]udgment on the pleadings is not appropriate merely because the claimant's case is weak and he is unlikely to prevail on the merits." *Huss*, 31 N.C. App. at 469.  "A motion for judgment on the pleadings is allowable only where the

pleading of the opposite party is so fatally deficient in substance as to present no material issue of fact[.]" *George Shinn Sports, Inc. v. Bahakel Sports, Inc.*, 99 N.C. App. 481, 486 (1990) (quoting *Dobias v. White*, 239 N.C. 409, 412 (1954)) (cleaned up) (internal citations omitted).

## V. ANALYSIS

38. Loyd now seeks to have dismissed all the remaining Counterclaims asserted by Defendants against him.

### A. Counts I, II, III, and VI

39. Loyd first contends that Counts I, II, III, and VI of the Counterclaims should be dismissed on the basis that "Defendants have not alleged, nor have they sustained, any damages beyond mere speculation or conjecture" to support these claims. (Mem. Supp. 6.) The Court disagrees.

40. The Counterclaims allege that Loyd's involvement in the issuance of false certificates damaged Defendants by resulting in a decrease in the value of GIA, potential buyers rescinding or greatly reducing their offers to purchase GIA, and an investigation into GIA by the North Carolina Department of Insurance. (Countercls. ¶¶ 16, 18, and 25.)

41. The Counterclaims also allege that Loyd has refused to assist Defendants in identifying all the false certificates in question, thereby preventing Defendants from better addressing the potential liabilities arising from these certificates. (Countercls. ¶ 19.)

42.     Taking all these allegations as true and viewing them in the light most favorable to Defendants as non-movants, the Court concludes that Defendants have sufficiently alleged damages to support of Counts I,[6] II, III, and VI at this pleading stage of the litigation. *See, e.g., Demarco v. Charlotte-Mecklenburg Hosp. Auth.*, 268 N.C. App. 334, 341 (2019) ("An allegation of damages is sufficient under Rule 12(b)(6) 'so long as it provides the defendant notice of the nature and basis of plaintiff's claim so as to enable him to answer and prepare for trial.' " (quoting *Acosta v. Byrum,* 180 N.C. App. 562, 570 (2006)) (cleaned up) (internal citations omitted)).[7]

43.     Plaintiff also argues that Defendants' Counterclaim for fraud (Count III) should be dismissed because it "fails to satisfy Rule 9(k) of the North Carolina Rules of Civil Procedure, which requires Defendants to plead Fraud with specificity[,]" given that "the alleged damages for 'future uncertain liabilities' were not plead with sufficient specificity and constitute nothing more than speculation or conjecture at this point." (Mem. Supp. 9.)

44.     At the hearing on the Motion, Plaintiff's counsel clarified that Loyd was seeking to dismiss the fraud Counterclaim pursuant to Rule 9(b), and not Rule 9(k) which deals instead with punitive damages. *See* N.C.G.S. § 1A-1, Rule 9(k).

---

[6] The North Carolina Supreme Court recently held that "potential liability for nominal damages is sufficient to establish the validity of [a] claim[ ] for breach of fiduciary duty," *Chisum v. Campagna*, 376 N.C. 680, 2021-NCSC-7, ¶ 44, and therefore, even if Defendants ultimately fail to prove actual damages on their breach of fiduciary duty Counterclaim (Count I), the absence of such evidence alone would not defeat their claim.

[7] In raising this argument that Defendants have not sustained damages beyond mere speculation or conjecture, Loyd seemingly takes the position that Defendants must make some sort of evidentiary showing with respect to damages at the pleading stage. However, as our Court of Appeals has explained, "[n]either party has any evidentiary burden at [the pleading] stage[.]" *Neier v. State,* 151 N.C. App. 228, 233 (2002).

45.     Rule 9(b) provides that "[i]n all averments of fraud, . . . the circumstances constituting fraud . . . shall be stated with particularity." N.C.G.S. § 1A-1, Rule 9(b).

46.     However, Loyd has not cited to any controlling law—and the Court's own research has not revealed any—providing that this particularity requirement extends to the alleged damages for fraud. *Cf. Terry v. Terry*, 302 N.C. 77, 85 (1981) ("[I]n pleading actual fraud the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations.").

47.     As a result, the Court is unpersuaded by Plaintiff's contention that the damages resulting from the alleged fraud must be pled with "specificity" (i.e., with particularity).

48.     As addressed previously, the Counterclaims sufficiently allege that Defendants were damaged by Loyd's conduct.

49.     For these reasons, the Court denies the Motion to the extent that it requests dismissal of Counts I, II, III, and VI of the Counterclaims.

**B.     Count V**

50.     Loyd argues that Defendants' UDTP Counterclaim (Count V) should be dismissed because "Defendants have not alleged any 'egregious or aggravating circumstances' sufficient for [Section 75-1.1] to take effect." (Mem. Supp. 11.) In addition, Loyd asserts that Defendants have not sufficiently alleged an injury to

support their UDTP Counterclaim. (Mem. Supp. 11.) Both arguments are unavailing.

51. To properly state a claim for UDTP under Section 75-1.1, claimants "must allege an unfair or deceptive act or practice in or affecting commerce, resulting in actual injury." *Moose v. Allegacy Fed. Credit Union*, 2021 NCBC LEXIS 47, at \*11 (N.C. Super. Ct. May 5, 2021) (citing *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 593 (2005)).

52. "It is well established that 'a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1.'" *Id.* (quoting *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 62 (1992)) (internal citations omitted); *see also SciGrip, Inc. v. Osae*, 373 N.C. 409, 427 (2020) ("[A]n intentional breach of contract, standing alone, simply does not suffice to support the assertion of an unfair and deceptive trade practices claim."); *Birtha v. Stonemor, N.C., LLC*, 220 N.C. App. 286, 298 (2012) ("North Carolina courts are extremely hesitant to allow plaintiffs to attempt to manufacture a tort action and alleged UDTP out of facts that are properly alleged as [a] breach of contract claim." (quoting *Jones v. Harrelson & Smith Contr'rs, LLC,* 194 N.C. App. 203, 229 (2008)) (internal citation omitted)).

53. For a breach of contract to fall within the scope of Section 75-1.1, "[e]gregious or aggravating circumstances must be alleged" and ultimately proven. *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 794 (2002) (citing *Bartolomeo v. S.B. Thomas, Inc.,* 889 F.2d 530, 535 (4th Cir. 1989).

54. First, the Court concludes, based on the same considerations as set forth above in its analysis of Defendants' alleged damages, that Defendants have sufficiently alleged an injury in the Counterclaims to support the UDTP Counterclaim.

55. As for Loyd's other contention—that Defendants have not alleged sufficient egregious or aggravating circumstances accompanying Plaintiff's alleged breach of contract to support the UDTP Counterclaim—Defendants argue that they are not required to allege such circumstances here because their UDTP claim does not rest solely on a breach of contract claim. (Mem. Opp'n 9.) The Court agrees.

56. The Counterclaims specifically allege that Loyd "engag[ed] in unfair and deceptive trade practices by issuing false certificates of insurance to [Loyd] and [GIA's] insurance clients," (Countercls. ¶ 53), and only two of the three breach of contract Counterclaims are based on this same alleged misconduct by Loyd (the breach of contract Counterclaim arising from the Merger Agreement and the breach of contract Counterclaim arising from the Associate Agent Agreement). (Countercls.)

57. Moreover, Loyd's alleged issuance of false certificates forms the basis for Defendants' breach of fiduciary duty and fraud Counterclaims, both of which can independently support a UDTP claim. *See, e.g.*, *White v. Thompson*, 196 N.C. App. 568, 578 (2009) ("[C]onduct which constitutes breach of a fiduciary duty . . . is sufficient to support a [UDTP] claim." (quoting *Compton v. Kirby*, 157 N.C. App. 1, 20 (2003))); *Bhatti v. Buckland*, 328 N.C. 240, 243 (1991) ("The case law applying

Chapter 75 holds that a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred.").

58.    The Counterclaims also allege that Loyd has refused to help Defendants identify all the false certificates issued by him or his subordinates and that Loyd is actively concealing the extent of his fraudulent conduct.  (Countercls. ¶ 19.)

59.    All these allegations, when taken as true and viewed in the light most favorable to Defendants, point to more egregious activities than mere breach of contract.

60.    Accordingly, the Court concludes that Defendants have sufficiently stated a Counterclaim against Loyd for UDTP under Section 75-1.1 and thus denies the Motion to the extent that it requests dismissal of this Counterclaim.[8]

## C.    <u>Count VII</u>

61.    Count VII of Defendants' Counterclaims seeks specific performance in the alternative should the Court reject the claim for rescission of the Shareholders' Agreement under Count IV based on Plaintiff's alleged refusal to sell his ownership interest in GIA to GIA.  (Countercls. ¶¶ 63–74.)

62.    Plaintiff claims that the specific performance Counterclaim should be barred by the equitable doctrine of unclean hands.  (Mem. Supp. 12–13.)

---

[8] For the first time at the Hearing, Loyd's counsel argued that the alleged conduct did not affect commerce because it was between employees of a company.  However, the Court elects not to consider this issue because it was not raised in the Motion, it was not fully briefed by the parties, and therefore it is not properly before this Court for consideration.  Loyd is free to revisit this issue on a more developed record after discovery.

63. At the outset, the Court notes that the doctrine of "unclean hands" is fact dependent and generally left for the trier of fact to decide. *Ferguson v. Ferguson*, 55 N.C. App. 341, 347 (1982) ("Whether plaintiff committed an unconscionable act and whether her actions were more egregious than those of defendants, are questions of material fact to be decided by a jury and not by the court." (citing *High v. Parks,* 42 N.C. App. 707 (1979)); *Shaw v. Gee*, 2018 NCBC LEXIS 109, at *18 (N.C. Super. Ct. Oct. 19, 2018) (referring to the issue as a "classic jury question"); *see also Southeast Anesthesiology Consultants v. Charlotte-Mecklenburg Hosp. Auth.*, 2018 NCBC LEXIS 137, at *78–80 (N.C. Super. Ct. June 22, 2018).

64. At the hearing on this matter, Plaintiff agreed that the unclean hands defense should likely be left for the jury to decide at trial.

65. Accordingly, this Court denies the Motion as to Count VII as well.

**D.    Punitive Damages in Counts I and II**

66. Plaintiff moves for dismissal of Defendants' prayer for punitive damages.

67. As a preliminary matter, the fraud claim has survived the Motion, as addressed above. Fraud is an aggravating circumstance specifically set forth in the North Carolina statute allowing for the recovery of punitive damages. N.C.G.S. § 1D-15 (1995).

68. Here, Defendants have satisfied the pleading requirements for fraud, as discussed above, and therefore Defendants' claim for punitive damages based on the same alleged fraud shall survive the Motion as well, in accordance with N.C. General Statute Section 1D-15 allowing claims for punitive damages where fraud is alleged.

*See S. Fastening Sys. v. Grabber Constr. Prods.*, 2015 NCBC LEXIS 42, at \*29 (N.C. Super. Ct. Apr. 28, 2015) ("Because [Plaintiff] has sufficiently pled several claims for which it seeks compensatory damages and has further alleged that Defendants' conduct was 'intentional, willful, wanton, and malicious,' the Court concludes [Plaintiff's] claim for punitive damages should survive at this stage of the proceedings."); *see also Aldridge v. Metro. Life Ins. Co.*, 2019 NCBC LEXIS 116, at \*145–46 (N.C. Super. Ct. Dec. 31, 2019) (denying a motion to dismiss to the extent that punitive damages were sought as a remedy for any surviving substantive claim for which punitive damages may be awarded under applicable law).

69.     Accordingly, this Court denies the Motion as to Counts I and II regarding the recovery of punitive damages.

### VI.     CONCLUSION

70.     For the foregoing reasons, the Court hereby **DENIES** the Motion in its entirety.

    **SO ORDERED**, this the 1st day of September, 2021.

                                        /s/ Michael L. Robinson
                                        Michael L. Robinson
                                        Special Superior Court Judge
                                            for Complex Business Cases